IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 96-40116

_____

In Re: JESUS RODRIGUEZ; MARIA RODRIGUEZ;
    JESUS REYES; YOLANDA REYES,

Petitioners.

_____

Petition for Writ of Mandamus to the United States
District Court for the Southern District of Texas, McAllen

_____

March 22, 1996

Before WIENER, PARKER and DENNIS, Circuit Judges.

BY THE COURT:

IT IS ORDERED that the petition for writ of mandamus is DENIED.

James L. Dennis, dissenting:

Plaintiffs' petition this Court pursuant to 28 U.S.C. §1651 for writ of mandamus to order the district court to vacate its denial of the plaintiffs' Motion to Remand. The majority of this panel has decided to deny the plaintiffs' petition. However, such action skirts one of the essential purposes of 28 U.S.C. §1651, the All Writs Statute. The United States Supreme Court has stated, "We believe that supervisory control of the District Courts by the Courts of Appeals is necessary to proper judicial administration in the federal system. The All Writs Act confers on the Courts of Appeals the discretionary power to issue writs of mandamus in the exceptional circumstances ...", *La Buy v. Howes Leather Co.*, 352 U.S. 249, 259-260 (1957) where ordinarily the order is non-appealable.

1

Moore's Federal Practice, supra at 110.26. See *Securities and Exchange Commission v. Krentzman*, 397 F.2d 55 (5th Cir.1968)(issuing a writ of mandamus to (1) vacate an order of the district court acting "outside [its] authority" by exercising what it thought to be discretionary power it did not possess, and (2) enter an order directing the appropriate action). Plaintiffs filed this petition because the district court has yet to issue a final order for the summary judgment granted the defendants. The dominant principle of federal appellate jurisdiction is that a judgment must be final to be appealable. James Wm. Moore, Bernard J. Ward, Moore's Federal Practice, Vol 9 §110.26. However, if inexorably applied, the final judgment rule may result in injustice. Machine-like rigidity cannot be the final goal of judicial administration. There is some need for flexibility so that, in exceptional situations, appellate review may be had of a non-appealable order, ... such cases do arise, and the courts should be alert to respond. Moore's Federal Practice, supra at 110.26.

In this case, the district court appears to have committed clear error by placing the heavy burden of persuasion to show fraudulent joinder on the wrong party. As a result of this apparent legal error, there is "serious doubt" whether the district court had jurisdiction to proceed further with the case. *Roche v. Evaporated Milk Ass'n*, 319 U.S. 21, 26 (1943). The plaintiff's petition for writ of mandamus should be granted in aid of this Court's appellate jurisdiction and to confine the district court to a lawful exercise of its prescribed jurisdiction. I dissent from the majority's decision to deny the plaintiffs' petition for mandamus and assign reasons to support the position that the district court committed clear error by denying the plaintiffs' Motion to Remand.

In a nutshell, the district court has exceeded its jurisdiction based on an error of law, and this Court has the authority to grant a writ of mandamus to correct this legal error. Furthermore, because the defendants did not submit a proposed order to the district court, as instructed by the district court, granting summary judgment to remaining defendants, plaintiffs had no final order from which to appeal and had no other choice but to petition this Court for writ of mandamus. The parents of five minors who were killed following a teenage party at a city civic center during which alcoholic beverages were consumed filed suit in Texas state court for wrongful death damages against Sonja Sosa, the guard in charge of security at the party, and her employer Wells Fargo Security Services, a Pennsylvania corporation. The defendants removed the case to the federal district court, contending that Sosa, a Texas citizen, had been fraudulently joined for the sole purpose of defeating diversity jurisdiction. The federal district court overruled the plaintiffs' motion to remand the case to state court. Plaintiffs now apply to this court for relief. There is no contention that the plaintiffs are guilty of actual fraud in their pleadings. The only issue is whether the defendants have carried their heavy burden of showing that there is no possibility that the plaintiffs have a cause of action against Sonja Sosa in state court.

In determining whether a case was properly removed, this Court repeatedly has held that the

2

district courts and this court must not "pretry" substantive factual issues in order to answer the discrete threshold question of whether the joinder of an in-state defendant is fraudulent. *Dodson v. Spiliada Maritime Corp.,* 951 F.2d 40, 42 (5th Cir.1992); *Green v. Amerada Hess Corp.*, 707 F.2d. 201, 204 (5th Cir.1983); *B., Inc. V. Miller Brewing Co.,* 663 F.2d 545, 546 (5th Cir.1981). Even in a case in which "state law liability was at best uncertain, this court has held that the case was cognizable only in state courts." *B., Inc.* at 550, n. 11.

The burden of persuasion placed upon those who cry "fraudulent joinder" is indeed a heavy one. In order to establish that an in-state defendant has been fraudulently joined, the removing party must show either that there is no possibility that the plaintiff would be able to establish a cause of action against the in-state defendant in state court; or that there has been outright fraud in the plaintiff's pleadings of jurisdictional facts. *B., Inc. v. Miller Brewing Co.,* 663 F.2d 545, 549 (5th Cir.1981).

The district court (or this court in its de novo review) must evaluate all of the factual allegations of the parties contained in their pleadings, depositions and affidavits in the light most favorable to the plaintiff, resolving all contested issues of substantive fact in favor of the plaintiff. Id at 549, citing authorities. Moreover, the district court must resolve any uncertainties as to the current state of controlling substantive law in favor of the plaintiff. Id at 550. If there is even a possibility that a state court would find a cause of action stated against any one of the named in-state defendants on the facts alleged by the plaintiff, the federal court must find that the in-state defendants have been properly joined, that there is incomplete diversity, and that the case must be remanded to the state courts. Id at 550. In other words, the question is whether there is arguably a reasonable basis for predicting that the state law might impose liability on the facts involved. If that possibility exists, a good faith assertion of such an expectancy in a state court is not a sham and is not fraudulent in facto or in law. Id at 550 quoting from Brown, C.J., in *Bobby Jones Garden Apartments v. Suleski*, 391 F.2d 172, 177 (5th Cir.1968).

In essence, the district court, or this court on review, should conclude there is no federal jurisdiction and remand the case to the state court if either federal court "cannot predict with absolute certainty that a Texas court would summarily dismiss the causes of action asserted against [the] defendant []." *B. Inc. V. Miller Brewing Co.*, 663 F.2d at 554. See also, *Dodson v Spiliada Maritime Corp.*, 951 F.2d at 42-43, quoting other sources. If that prediction cannot be made "a good faith assertion of such an expectancy in a state court is not a sham ... and is not fraudulent in fact or in law." *B. , Inc,* 663 F.2d at 550 (quoting Brown, CJ in *Bobby Jones Garden Apts* 391 F.2d at 177).

In this case, the facts, as alleged and reasonably inferred, in the light most favorable to the plaintiffs are as follows. On December 12, 1992, the plaintiffs' minor children and others attended

3

a quinceanera to celebrate the 15th birthday of a young woman hosted by her parents for their daughter and 150 of her friends at Houston's Magnolia Civic Center which they rented from the city. The City of Houston contracted for security for the event with Wells Fargo Guard Services. The security company assigned its employee, Sonja Sosa, a trained, licensed security guard equipped with uniform, badge and a 357 magnum, to provide security at the party. In her deposition, Sosa admitted that she was aware that minors were drinking alcohol inside the center and in the parking lot during the quinceanera. She stopped some of the minors from drinking by taking away their beer. At one point she threatened to shut the party down by calling the Houston Police Department. However, she allowed most of the minors who were drinking to continue to consume beer and did not call the police. A few hours after they left the party in one of the minors' car, five of the children were killed in a one automobile accident. The driver was one of the minors who had been drinking at the party. Although the facts are in dispute as to how much the deceased minors drank at the party or afterwards, autopsy reports of record indicate that they all had high blood alcohol contents at the time of the accident. An investigation report of the Texas Alcoholic Beverage Commission indicated that the partying minors were allowed to buy and consume beer on the premises and that the host parents were allowed to serve kegs of beer at the party. .

Sosa's security guard background included training at a two week school where she learned how to handle a police baton, how to carry, handle, shoot, and when to use hand weapons, and other "dos and don'ts" of basic security. As a result of that training Sosa was issued a certificate by the training center commissioning her as a security guard and giving her the right to carry firearms.

She stated in her deposition that her job the evening of the party was to protect the premises from damage, and to report any "violation of the law" that she observed to the city administrator at the facility. In her log, written by her at intervals during the party, she stated twice that her authority included calling the Houston Police Department if the "problem" with underage beer drinking was not controlled. In her deposition she stated it was her duty to follow written orders posted at the site, but at the time the deposition was taken, she could not recall if the orders said anything about the consumption of alcohol. However, the City of Houston Manual of Policies and Procedures mandates that "The serving of alcoholic beverages is not allowed" at the subject facility. Affidavits of minor and adult guests at the party stated that Sosa observed and knew minors were drinking at the party and on the premises.

Resolving any uncertainties of state law in Plaintiffs' favor, it can be inferred reasonably that Sosa's job, as a commissioned, uniformed, badged, security guard, trained to use and carrying a 357 magnum gun, who was hired by the City of Houston for security purposes at the public facility, included enforcement of state laws and city ordinances during the activities at the Magnolia Center. Sections 106.05, and 106.06 of the Texas Alcoholic Beverage Code states that it is illegal for minors

4

to be served or to consume alcoholic beverages. Houston's manual of policies and procedures for its civic center and other centers prohibits serving alcoholic beverages on the premises..

Applying the principles set forth in *B., Inc.; Amerada Hess* ; *Bobby Jones*; and *Dodson* to the present case, it is clear that the district court erred in concluding that the defendants had borne their heavy burden of proving "fraudulent joinder." First, the district committed error in placing the burden of persuasion on the wrong party. That court ruled that the <u>plaintiffs</u> must "give me a case that says that a person who has been hired as a security guard has the responsibility for making sure at a party that no minors drink. That that is a recognizable cause of action in the state of Texas." Thus, the district court applied a rule that is the obverse of the Fifth Circuit's precedents with regard to "fraudulent joinder" to defeat diversity. Instead, the district court should have followed our cases that require the <u>defendants</u> to cite a case or law that would enable a federal court to "predict with absolute certainty that a Texas court would summarily dismiss" the cause of action against the pertinent defendant. *B. Inc.,* 663 F.2d at 550. Consequently, the district court would have been more correct to require the <u>defendants</u> to "give me a case that a security guard has no responsibility to control illegal, under age drinking or to take any precautions to abate the risks created by minority drunkenness during a party on city property and drunken driving afterwards." Second, the district court also erred when it "pretried" the proximate cause issue on the merits, by finding "[i]n this case, this injury occurred four hours after they had left the party there."

There is no Texas case or law which makes it possible for any federal court to predict with absolute certainty that a Texas court would summarily dismiss the cause of action asserted against the defendant security guard Sosa. Quite to the contrary, (1) there are Texas cases which reasonably could be extended by analogy to afford a common law cause of action against an armed, badged and uniformed security guard for foreseeable harm caused by her negligent failure to control illegal underage drinking and evident drunkenness at a public facility where she is assigned to maintain order and safety; (2) there are Texas cases, laws and ordinances which easily could be applied to impose a duty upon a security guard as a municipality's custodian and delegate to maintain order and safety at a city recreational facility during its rental to private persons, thus affording persons injured proximately by the guard's derelictions a negligent per se cause of action; and, (3) there are Texas cases that may support a contractual liability theory against Sosa.

The following cases could reasonably be extended by analogy to afford the plaintiffs  a common law cause of action against  Sosa: *Otis Engineering Corporation v. Clark*, 668 S.W.2d 307 (Tex. 1983)(Plaintiffs-husbands had wrongful death actions against a defendant employer  who allowed its employee to leave work in a drunken condition and cause the fatal accident thirty minutes later, some three miles away from the plant, although the employee was not in the course of his employment at the time of the mishap. The court adopted Restatement (Second) of Torts, Section

5

319, that recognizes a duty for an employer to be one of a reasonably prudent employer under the same or similar circumstances to prevent an incapacitated employee, under control of the employer, from causing an unreasonable risk of harm to others and stated further that "[s]uch a duty may be analogized to cases in which a defendant can exercise some measure of reasonable control over a dangerous person when there is a recognizable great danger of harm to third persons," [and that] "changing social conditions lead to the recognition of new duties. No better statement can be made, than that the courts will find a duty where, in general, reasonable men would recognize and agree it exists" *Id.* at 310); *El Chico Corporation v. Evans*, 732 S.W.2d 306, (Tex.1987)(holding that an alcoholic beverage licensee owes a common law duty to the general public not to serve alcoholic beverages to a person when the licensee knows or should know that the patron is intoxicated, and the licensee who violates that duty is negligent as a matter of law.); *Berly v. D & LSecurities and Investigations, Inc.*, 876 S.W.2d 179 (Tex.App. 1994)(recognizing the common law duty of a security guard to take affirmative action to control or avoid increasing the danger from another's conduct that the security guard has at least partially created, holding that evidence raised a material issue of fact as to whether the store employee's death was reasonably foreseeable, whether the security guard failed to use proper procedures in stopping, searching, and handcuffing the shoplifter, and whether the shooting would not have taken place but for any such failure.)

Sosa's allowance of alcoholic beverages to be served to minors on city property in violation of Texas law and city ordinances was arguably negligence per se under Texas law. *Ryan v. Friesenhahn*, 911 S.W.2d 113 (Tex.App. 1995)(holding that a cause of action existed against the hosts-defendants who invited and then served a minor alcoholic beverages on the defendants' property. Later that night the minor was killed in an auto accident. The court found that allowing the deceased, a minor, to become intoxicated, in direct violation with the Texas Alcoholic Beverage Code 106.06 was negligence per se because the fatally injured party was among the class of persons the statute protects.)

The contract by which Wells Fargo agreed to provide security at the party is not of record, but since it is the heavy burden of the defendant to prove fraudulent joinder for the purpose of demonstrating that there is federal jurisdiction in this case, it should be presumed or inferred for purposes of deciding this discrete threshold issue that the contract is susceptible to the interpretation that Wells Fargo agreed to maintain safety and order by having its security guard enforce laws and ordinances against alcohol consumption on the premises and against providing alcoholic beverages to minors. Accordingly, Texas case law may support finding a duty imposed on Ms. Sosa arising from the contract that existed between the Wells Fargo and the City to provide security for the *party: Nixon v. Property Management Company*, 690 S.W.2d 546 (Tex. 1985) (where the Texas Supreme Court found that the trier of fact must determine whether the apartment management company,

6

contracted to manage the apartment complex and as such charged with a duty to deter crime by keeping vacant apartment windows and doors secured, violated a Dallas City Ordinance on minimum standards for landowners, without a valid excuse, and thus would be per se negligent.); *Midkiff v. Hines*, 866 S.W.2d 328(Tex.App. 1993) (finding there was a genuine issue of material fact in determining the duty of a defendant security company that contracted to provide security for a shopping center, because such a defendant has a duty to prevent criminal acts of third persons where the criminal conduct is the foreseeable or where it reasonably appears or should appear to him that others in the exercise of their lawful rights may be injured.); *Barefield v. City of Houston*, 846 S.W.2d 399 (Tex.App. 1992) (inferring that a security firm contracted to provide security services during a concert has a duty to protect concert goers on the leased against criminal acts of third persons).

Finally, there are cases from other states directly holding a security guard liable for not preventing minors from drinking that we cannot predict with certainty would not be applied by analogy by the Texas courts to bar dismissal of the plaintiffs' causes of action against the defendant Sosa: *e.g., Kramer v. Continental Casualty Company*, 641 So.2d 557 (La.App. 3rd Cir.1994)(holding security guards of a hotel had a duty to prevent underage alcoholic consumption by hotel guests and were liable for the wrongful death of a minor who consumed alcohol at the motel and was later killed in a traffic accident); *Professional Sports, Inc. v. Gillette Security, Inc.*, 766 P.2d 91 (AZ. App.Div 1, Dep.A 1989)(holding the security company had a duty arising out of its contract to protect third party patrons of the ball park, including underage drinking patrons).

In *B., Inc*, Judge Goldberg, with Judges Brown and Ainsworth joining, said that in treating the issue of "fraudulent joinder" we would do well to recall certain jurisdictional fundamentals:

> " It is axiomatic that the jurisdiction of the federal courts is limited, with its scope defined by the Constitution and by statute. Where a federal court proceeds in a matter without first establishing that the dispute is within the province of controversies assigned to it by the Constitution and statute, the federal tribunal poaches upon the territory of a coordinate judicial system, and its decisions, opinions, and orders are of no effect. Thus the trial court must be certain of its jurisdiction before embarking upon a safari in search of a judgment on the merits.
>
> " Because the establishment of a basis for the exercise of subject matter jurisdiction is the sine qua non of federal litigation, we have consistently held that it is the party who urges jurisdiction upon the court who must always bear the burden of demonstrating that the case

7

is one which is properly before the federal tribunal. Applying this well established principle to matters similar to the case at bar, we find that where an out-of-state defendant removes an action from state to federal court, the burden is upon the removing party to plead a basis for jurisdiction. Similarly, where there have been allegations of "fraudulent joinder," it is clear that the burden is upon the removing party to prove the alleged "fraud." *Id* at 548-549.

***

" When confronted with allegations of fraudulent joinder, the trial court's vision must be synoptic rather that microscopic. The court must take care not to focus solely upon the factual minutiae of the individual case and thereby lose sight of the important questions of federal jurisdiction presented when the propriety of removal is contested.

"The federal judiciary is now seen in some quarters as an ever growing monolith. It behooves those of us in federal tribunals to be certain of our jurisdictional underpinnings before we embark upon a full scale trial, and we should constantly remind ourselves that we must not trespass upon the judicial "turf" of the state courts. Many commentators have suggested that diversity is a judicial farce, but for now it remains a judicial fact. If there is complete diversity between the adverse parties, the defendant is entitled to a federal forum; but, if the plaintiff and even one properly joined defendant are residents of the same state, the federal court has no business taking jurisdiction over the action." *Id* at 554.(citations omitted)

In my opinion, the district court erred in determining that it had jurisdiction to try this case. The defendant did not carry its heavy burden to show fraudulent joinder. The district court and this court cannot predict with absolute certainty that a Texas court would summarily dismiss the causes of action asserted against the defendant Sosa. If we approve the district court's decision we, in effect, will have allowed the district court to overrule and turn upside down this court's carefully crafted precedents governing the proof of fraudulent joinder for the sole purpose of defeating a federal court's diversity jurisdiction. Instead, we will encourage district courts to follow an obverse rule, i.e., that anytime an in-state plaintiff sues an out-of-state employer alleging that the employer is vicariously liable for the negligence of its in-state employee, the plaintiff has the burden of showing

8

there is a state case factually on all fours in his favor in order to avoid removal and trial of his state cause of action by the federal courts. I believe that such a rule is statutorily unwarranted and therefore an unconstitutional expansion of the federal courts' limited diversity jurisdiction. I dissent from this Court's decision to deny the plaintiffs' the requested relief - to reverse the district court's ruling and cause this state wrongful death action to be remanded to the state court.