## IN THE SUPREME COURT OF MISSISSIPPI
### NO. 1998-CA-01399-SCT

*HOLLYWOOD CEMETERY ASSOCIATION*

*v.*

*BOARD OF MAYOR AND SELECTMEN OF THE CITY OF McCOMB CITY, MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 05/21/1998 |
| TRIAL JUDGE: | HON. KEITH STARRETT |
| COURT FROM WHICH APPEALED: | PIKE COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | WILLIAM F. SELPH, III |
| ATTORNEY FOR APPELLEES: | JOHN HARRIS WHITE, JR. |
| NATURE OF THE CASE: | CIVIL - CONTRACT |
| DISPOSITION: | AFFIRMED - 03/23/2000 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 4/13/2000 |

## BEFORE PITTMAN AND BANKS, P.JJ., AND MILLS, J.

## MILLS, JUSTICE, FOR THE COURT:

¶1. The Circuit Court of Pike County, Mississippi acting as an appellate court pursuant to Miss. Code Ann. § 11-51-75 (1972), affirmed the action of the Board of Mayor and Selectmen of the City of McComb City, Mississippi (City), denying that Hollywood Cemetery Association (HCA) had a property interest in the opening and closing of graves in the city-owned cemetery; that board actions of the City constituted an unjust taking; or that the City interfered with HCA's contract rights. From that decision HCA appeals assigning the following as error:

> **1) Whether the City of McComb, Mississippi through the Board of Mayor and Selectmen of the City of McComb City, Mississippi violated the property and liberty interests of the Hollywood Cemetery Association in rescinding Order No. 231:10/87.**

> **2) Whether the City unlawfully interfered with the business and contracts of HCA by causing a detrimental financial impact upon HCA due to the loss of revenues for opening graves.**

> **3) Whether the City has conceded the facts recited in HCA's Bill of Exceptions, and the City's Answer to the Bill of Exceptions should be disallowed by the Court.**

> **4) Whether the City's repeal of HCA's right to open graves at the Hollywood Cemetery Amounted to a taking without just compensation.**

> **5) Whether HCA is entitled to recover its attorneys' fees from the City.**

### STATEMENT OF FACTS

¶2. During the Great Depression, the City found that it could no longer pay for burying its dead in the idyllically named, city-owned Hollywood Cemetery. The City's financial embarrassments birthed the Hollywood Cemetery Association, established as a non-profit corporation on March 12, 1932:

> Its purpose shall be to maintain, care for and beautify Hollywood Cemetery in the city of McComb city, Pike County, Mississippi, and to this end, it may collect dues from its membership, contract for the special care of cemetery lots, receive aid and donations from any person or persons or from other sources and may employ labor and contract with same to perform such services as may be required in said cemetery, to carry out the purpose of this organization.

Constitution of Hollywood Cemetery Association.

¶3. The Hollywood Cemetery is owned by the City, which has sold and currently sells deeded lots to individuals. HCA, through dues collected and other income, including special care fees and fees generated from opening and closing of graves, has hired workers and maintained the cemetery for over 60 years providing the following services: (1) opening and closing of graves in the city cemeteries for privately owned funeral homes; (2) interring and disinterring bodies; (3) providing grave site maintenance for the owners of grave sites who have purchased perpetual care contracts (i.e., lump sum payment for perpetual grave site maintenance); and (4) providing grave site maintenance for the owners of grave sites who annually purchase Special Care Contracts.

¶4. Over time, problems began to develop regarding the maintenance of graves without perpetual care. HCA did not wish to care for these graves. Since neither HCA nor the progeny of the decedents cared to keep up these sites, the City was forced to assume these responsibilities--the expense to be borne by the taxpayers of the City.

¶5. The newer parts of the cemetery have lots that are only sold with perpetual care. The money received by the City from the sale of these lots is placed in a perpetual care trust and operated by the City. This new system implemented by the City does not affect the rights and responsibilities of prior perpetual care contracts entered into by HCA with individual gravesite owners.

¶6. The City addressed the issue of opening and closing graves in October, 1987. By order dated October 27, 1987, HCA was given written authority to open graves in city owned cemeteries. However, by order dated October 8, 1996, the city rescinded the October 27, 1987 order allowing HCA to open graves in all the city owned cemeteries and designated itself as the sole entity authorized to open and close graves. HCA complains that it derived a significant portion of its income from fees charged for opening and closing graves for private individuals and funeral homes, even though HCA had no separate agreement with these entities. This dispute over who could dig graves festered until February 18, 1997.

¶7. The Board of Mayor and Selectmen took up an HCA submitted settlement proposal and voted to disapprove the proposal on March 11, 1997. From that decision, a second bill of exceptions was taken by HCA. The trial court, acting as an appellate court, upheld the City's action. From that ruling HCA appeals to this Court.

## ANALYSIS

**1) Whether the City of McComb, Mississippi through the Board of Mayor and Selectmen of**

**the City of McComb City, Mississippi violated property and liberty interests of the Hollywood Cemetery Association in rescinding Order No. 231:10/87 and whether the City's repeal of HCA's right to open graves at the Hollywood Cemetery Amounted to a taking without just compensation?**

**4) Whether the City's repeal of HCA's right to open graves at the Hollywood Cemetery Amounted to a taking without just compensation.**

¶8. The scope of a reviewing court is limited in examining the actions of a municipal board. Such an order may not be set aside by a reviewing court unless it is clearly shown to be arbitrary, capricious, or discriminatory or is illegal or without substantial evidentiary basis. *Sunland Publishing Co. v. City of Jackson*, 710 So.2d 879, 882 (Miss. 1998) (citing *City of Jackson v. Capital Reporter Pub. Co.*, 373 So.2d 802, 807 (Miss.1979)).

¶9. In an appeal from the decision of a municipal authority, Miss.Code Ann. § 11-51-75 (1972) states that the person aggrieved may "embody the facts, judgment and decision in a bill of exceptions" which will be transmitted to the circuit court acting as an appellate court. Miss.Code Ann. § 11-51-75 (1972). The bill of exceptions serves as the record on appeal, and this Court has held that "[t]he circuit court can only consider the case as made by the bill of exceptions. This is the only record before the circuit court, as an appellate court." *Stewart v. City of Pascagoula*, 206 So.2d 325, 328 (Miss.1968). Having said that, we review the decidedly skeletal record in this case.

¶10. In order to simplify the issues, we combine HCA's first and fourth assignments of error. HCA contends that the City violated its Fourteenth Amendment rights under the United States Constitution and its Article 3, section 14 rights under the Mississippi Constitution by rescinding the City's order authorizing HCA to open and close graves at the Hollywood Cemetery, which is owned by the City, without prior notice. HCA argues that the repeal impaired a vested property interest.

¶11. First, HCA offers no authority to support its contention that it has a vested property interest in the opening and closing of graves in the City-owned cemetery. The only case law that HCA offers is *Poindexter v. Greenhow*, 114 U.S. 270, 5 S.Ct 903, 29 L.Ed. 185 (1885), which HCA cites to state that an attempted repeal cannot divest vested rights. That puts the cart before the horse. Since HCA cannot establish that HCA's opening and closing of graves in the city cemetery is a vested property interest, it certainly cannot establish that the repeal of that duty amounts to a taking without just compensation. Miss. Code Ann. §21-17-1 states in pertinent part:

> Every municipality of this state shall be a municipal corporation and shall have the power to sue and be sued; to purchase and hold real estate, either within or without the corporate limits, for all proper municipal purposes, including parks, *cemeteries*, hospitals, schoolhouses, houses of correction, . . . to purchase and hold personal property for all proper municipal purposes; . . . to sell and convey any real and personal property owned by it, *and make such order respecting the same as may be deemed conducive to the best interest of the municipality, and exercise jurisdiction over the same.*

Miss. Code Ann. § 21-17-1 (Supp. 1999) (emphasis added).

¶12. The City owns the Hollywood Cemetery, the cemetery in which HCA claims its has a vested property

interest in the opening and closing of graves. The City chose to open and close the new graves in the interest of economic efficiency. The City was wholly within its statutory rights to make this decision.

¶13. Without expressly stating so, it is apparent that HCA assumed or expected its agreement with the City to open and close graves to be a vested property interest. This Court has stated that a mere unilateral expectation is not sufficient to create a vested property interest. *State v. Jones*, 726 So.2d 572, 574 (Miss. 1998). HCA argues that a binding agreement between it and the City was established over a period of time, through habit and custom, thereby creating more than a unilateral expectation. HCA offers proof that it has opened and closed graves for the city since 1932. This is irrelevant. The City's decision to repeal the order giving HCA the exclusive right to open and close graves was a lawful exercise of its police power. Though the City is responsible for those graves opened between October 27, 1987 and March 11, 1997, it bore no further obligations to HCA under the prior order after its revocation. The rule is well established that any exercise of police power is valid if it has for its object the protection and promotion of the public health, safety, morality or welfare, if it is reasonably related to the attainment of that object, and if it is not oppressive, arbitrary or discriminatory. *Hattiesburg Firefighters Local 184 v. City of Hattiesburg*, 263 So.2d 767, 772 (Miss. 1972). In other words, when governmental entities act pursuant to their police powers, and in the absence of a binding agreement, they are free to conduct their affairs in a manner consistent with their best interests provided their actions are reasonably related to the attainment of those interests and are not arbitrary, oppressive or discriminatory. Further, agreements sufficient to bind the governmental entity must consist of more than habit, custom, tradition, course of dealings or unilateral expectation. Here, the City's decision to repeal Order No. 231:10/87 is reasonably related to its interest in streamlining the maintenance of its cemetery for the overall welfare of its citizens and is not arbitrary, oppressive or discriminatory against HCA. The City's actions were within its authority and do not establish an unconstitutional taking. *See generally Board of Regents v. Roth*, 408 U.S. 564, 576, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).

### 2) Whether the City unlawfully interfered with the business and contracts of HCA by causing a detrimental financial impact upon HCA due to the loss of revenues for opening graves.

¶14. HCA next argues that the City unlawfully interfered with its business and contract. HCA contends that the City's adoption of the order rescinding HCA's authority to open and close graves in the cemetery amounts to a tortious interference with contract rights. HCA claims that it will no longer be able to honor and fulfill its own contract obligations to individuals who procured perpetual care contracts for the care and maintenance of gravesites since it will no longer be receiving the income from the opening and closing of graves.

¶15. An action for tortious interference with contract ordinarily lies when a party maliciously interferes with a valid and enforceable contract, causing one party not to perform and resulting in injury to the other contracting party. *Levens v. Campbell*, 733 So.2d 753, 760 (Miss. 1999). The four elements for this tort are: "(1) that the acts were intentional and willful; (2) that they were calculated to cause damage to the plaintiffs in their lawful business; (3) that they were done with the unlawful purpose of causing damage and loss, without right or justifiable cause on the part of the defendant (which constitutes malice); and (4) that actual damage and loss resulted." *Par Indus., Inc. v. Target Container Co.*, 708 So.2d 44, 48 (Miss. 1998) (quoting *Cenac v. Murry*, 609 So.2d 1257, 1268-69 (Miss.1992)). Of course the plaintiff must also prove that an enforceable obligation existed between the plaintiff and another party. *Merchants & Planters Bank v. Williamson*, 691 So.2d 398, 407 (Miss.1997). In addition, the plaintiff must prove that

the contract would have been performed but for the alleged interference. *Par Indus., Inc.*, 708 So.2d at 48.

¶16. HCA contends that the City's October 1996 order rescinding HCA's authority to open and close graves in city-owned cemeteries amounts to a tortious interference with contract rights. HCA argues that it will no longer be able to honor its perpetual care contracts with individual cemetery plot owners. However, in HCA's bill of exceptions HCA offers no proof of any such contracts. We have stated, "If the bill of exceptions is not complete and is fatally defective in that pertinent and important facts and documents are omitted therefrom, then the [circuit] court does not have a record upon which it can intelligently act." *Stewart*, 206 So.2d at 328. Further, this Court will not rely solely on assertions made in the briefs; it is the appellant's duty to establish any facts necessary to establish his claim of error. *Goss v. State*, 730 So.2d 568, 572 (Miss. 1998). Therefore, HCA having provided no proof whatsoever of its perpetual care contracts with individual gravesite owners, we must conclude that no such contracts exist, thereby precluding a claim for tortious interference with contract rights.

¶17. Assuming arguendo, that HCA does have valid and enforceable contracts with individuals for the perpetual care and maintenance of gravesites, we apply the four elements of tortious interference with contract rights. First, the City's action in adopting the October 1996 order which rescinded the October 1987 order authorizing HCA to open and close graves must be said to be intentional and willful and calculated to cause damage. HCA fails to offer any proof that the City calculated to cause damages to HCA. HCA merely contends that the City "knew that its actions would injure HCA." The City's mere knowledge of a detrimental effect on HCA does not constitute evidence that its actions were calculated to cause damage. Further, the City's actions were not done with an unlawful purpose of causing damage and loss without right or justifiable cause. When the City rescinded the October 1987 order it was exercising its statutory authority to "make such orders . . . as may be deemed conducive to the best interest of the municipality." Miss. Code Ann. § 21-17-1 (Supp. 1999). Finally, HCA offers no proof that any loss has occurred. HCA only hypothesizes that it will no longer be able to fulfill its contractual obligations to the individual gravesite owners because it will be forced out of business.

### 3) Whether the City has conceded the facts recited in HCA's Bill of Exceptions, and the City's Answer to the Bill of Exceptions should be disallowed by the Court.

¶18. HCA's next assignment of error is immaterial. The circuit court expressly stated that it did not consider the City's Answer to the Bill of Exceptions in its ruling.

### 5) Whether HCA is entitled to recover its attorneys' fees from the City.

¶19. HCA's final assignment of error concerns its right to recover attorneys' fees from the City. HCA claims that the City requested it to prepare a proposed agreement to resolve the principal dispute between the two entities and that HCA prepared such an agreement. However, the City voted not to adopt the agreement. HCA contends that the City never even considered adopting the agreement, and HCA cites authority stating that attorney fees may be recovered where punitive damages would be justified. *Aetna Cas. & Sur. Co. v. Steele*, 373 So.2d 797, 801 (Miss. 1979). HCA also states the well-established rule that punitive damages are appropriate when there is a wrongful act intentionally performed. *Milner Hotels v. Brent*, 207 Miss. 892, 899, 43 So.2d 654, 655 (1949). This argument is without merit. Sufficient facts have not been presented to in any way justify an award of punitive damages or attorneys' fees in this case. The City lawfully declined to adopt the agreement during a regular board meeting on March 11, 1997. Accordingly,

this issue is wholly without merit.

¶20. For the foregoing reasons, the judgment of the Circuit Court of Pike County is affirmed in all respects.

¶21. **AFFIRMED.**

**PRATHER, C.J., PITTMAN AND BANKS, P.JJ., SMITH, WALLER AND COBB, JJ., CONCUR. McRAE, J., CONCURS IN RESULT ONLY. DIAZ, J., NOT PARTICIPATING.**