IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 01-60337

_____


JOE ELLIS RILEY

                                   Plaintiff - Appellant

     v.

F A RICHARD & ASSOCIATES INC; INGALLS SHIPBUILDING;
AND ALEXIS HYLAND, An Individual


                                   Defendants - Appellees

_____

Appeal from the United States District Court
for the Southern District of Mississippi
_____
August 1, 2002

Before KING, Chief Judge, and REAVLEY and WIENER, Circuit Judges.

PER CURIAM:[*]

     Plaintiff-Appellant Joe Ellis Riley asserted various state

law claims against Defendants-Appellees in Mississippi state

court.  Defendants-Appellees removed the case to federal district

court.  Riley filed a motion to remand the case, and

---

     [*] Pursuant to 5TH CIR. R. 47.5, the court has determined
that this opinion should not be published and is not precedent
except under the limited circumstances set forth in 5TH CIR. R.
47.5.4.

Defendants-Appellees filed a motion to dismiss Riley's claims. The district court granted Defendants-Appellees' motion and dismissed all of Riley's claims with prejudice. The court denied Riley's motion to remand as moot. Riley appeals the dismissal of his claims. Because we find no basis for federal removal jurisdiction, we VACATE the district court's dismissal of Riley's claims and REMAND the case to the district court with instructions to remand the case to state court.

## I.  Factual and Procedural History

In October 1997, Plaintiff-Appellant Joe Ellis Riley sustained injuries to his left foot and ankle in an industrial accident while employed by Defendant-Appellee Ingalls Shipbuilding, Inc. ("Ingalls").  Pursuant to the Longshore and Harbor Workers' Compensation Act ("LHWCA"), 33 U.S.C. § 901, et seq. (1994), Ingalls, as Riley's employer, and Defendant-Appellee F.A. Richard & Associates, Inc. ("F.A. Richard"), as Ingalls's self-insured administrator, provided some compensation and medical coverage for the injuries to Riley's foot and ankle.  Dr. Chris E. Wiggins, a physician with the Mississippi Coast Orthopaedic Group, P.A. (the "Orthopaedic Group"), treated Riley for his injuries.  During the course of Riley's treatment, Dr. Wiggins diagnosed Riley with congenital spondylolisthesis at the L-4 vertebrae of the lumbar spine.  In April 1999, Dr. Wiggins concluded that Riley's increasing back pain was reasonably

2

related to the October 1997 industrial accident, rather than the congenital spondylolisthesis.

Riley asserts that in June 1999, Alexis Hyland, an employee and agent of F.A. Richard, posed as Riley's medical case manager, and that Hyland, while purporting to assist Riley in obtaining appropriate medical care, engaged in ex parte communications with Dr. Wiggins. According to Riley, these communications caused Dr. Wiggins to reverse his opinion regarding the nature and causation of Riley's back condition. After contact with Hyland, Dr. Wiggins concluded that a natural progression of Riley's congenital spondylolisthesis caused Riley's back pain rather than the accident.[1]

In June 2000, Riley filed suit in Mississippi state court against Ingalls, F.A. Richard, and Alexis Hyland in her capacity as an agent for F.A. Richard. Riley alleged that Ingalls and F.A. Richard established a close working relationship with the Orthopaedic Group, where numerous injured Ingalls employees are sent for treatment. According to Riley, this close relationship allows Ingalls and F.A. Richard to exert inappropriate influence over the Orthopaedic Group's physicians so as to interfere with the medical treatment of injured Ingalls employees.

---

[1] Riley asserts that Dr. Wiggins has since "re-reversed" his opinion regarding the causation of Riley's back pain. However, as Riley correctly notes, evidence of this re-reversal is not part of the record in this action, and we need not consider it.

3

Specifically, Riley asserts the following nine state law claims:
(1) intentional interference with contract, (2) breach of
fiduciary duty, (3) intentional interference with prospective
advantage, (4) medical malpractice (against Hyland, a registered
nurse), (5) fraud and misrepresentation, (6) negligence,
(7) intentional infliction of emotional distress, (8) intentional
interference with medical care and/or breach of confidentiality
of doctor/patient privilege, and (9) intentional interference
with medical care by ex parte communication. Riley's complaint
claims $82,673.18 in special damages in compensation for his
claim for permanent disability under the LHWCA, $500,000 in total
actual damages, and $25,000,000 in punitive damages.[2]

In July 2000, Ingalls, F.A. Richard, and Hyland
(collectively, the "Defendants") removed the case to federal
district court on the ground that Ingalls, the only non-diverse
defendant, was fraudulently joined to defeat diversity
jurisdiction. Riley filed a motion to remand in August 2000. In
September 2000, the Defendants filed a motion to dismiss
asserting that: (1) because the LHWCA provides the exclusive
remedy for Riley's claims, the Defendants are immune from suit in
tort and Riley's state law claims are preempted by the LHWCA; (2)
Riley failed to exhaust the administrative remedies provided by

---

[2] Riley has since indicated, both to this court and to the
district court, that his claim for special damages has
"evaporated" and that he is no longer pursuing those damages.

4

the LHWCA as required; and (3) the Defendants did not violate the patient/physician privilege because this case is governed by federal law, and federal common law does not recognize such a privilege.

At a hearing before the district court on Riley's motion to remand on March 21, 2001, the parties presented their arguments relating to the propriety of removal. The district court ultimately concluded that "this suit shall be dismissed for lack of subject matter jurisdiction." The court appears to have based this conclusion on its belief that the LHWCA provides the exclusive remedy for Riley. The district court then denied Riley's motion to remand as moot. Riley timely appealed the district court's final judgment dismissing the case with prejudice.

## II. Analysis

A. The District Court's Ruling

Riley's primary argument on appeal is that the district court erred by failing to remand the case to state court. We review de novo the district court's denial of Riley's motion to remand. See Rodriquez v. Sabatino, 120 F.3d 589, 591 (5th Cir. 1997).[3]

---

[3] Generally, a district court's denial of a motion to remand is not appealable because it is not a final order. Aaron v. Nat'l Fire Ins. Co. of Pittsburgh, 876 F.2d 1157, 1160 (5th Cir. 1989). However, when the denial of the motion to remand is coupled with a final order, we have jurisdiction to review the denial of remand. Id. In this case, the district court

5

When faced with a motion to remand, a federal court must first determine whether it may properly exercise removal jurisdiction before ruling on a motion to dismiss the plaintiff's complaint. 14C CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 3739, at 419-23 (1998). Defendants have a limited right, set forth in 28 U.S.C. § 1441(b) (1994), to remove cases from state court to federal court as follows:

> Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties. Any other such action shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought.

Thus, removal jurisdiction can be premised on either the existence of a federal question or diversity of the parties. The removing party bears the burden of establishing removal jurisdiction. <u>Dodson v. Spiliada Maritime Corp.</u>, 951 F.2d 40, 42 (5th Cir. 1992). In this case, the Defendants' notice of removal asserts diversity jurisdiction (based on the fraudulent joinder of Ingalls) and does not mention the existence of a federal question. Riley argues that, even though the issue of federal question jurisdiction was never before the district court, the

---

simultaneously denied Riley's motion to remand and granted the Defendants' motion to dismiss. Because the dismissal constitutes a final order, we have jurisdiction to review the district court's denial of remand. <u>See</u> <u>id.</u>

6

court improperly considered federal question jurisdiction at the March 2001 hearing.

Although the district court denied Riley's motion to remand as moot, a review of the transcript of the March 2001 hearing suggests that the court may have concluded that it had removal jurisdiction before dismissing the case.[4]  However, the transcript does not reveal whether the district court based its exercise of removal jurisdiction on the presence of a federal question or on diversity of the properly joined parties.  We need not determine the basis of the district court's ruling because we conclude that the district court lacked both federal question jurisdiction and diversity jurisdiction over this case.  Thus, the district court erred in denying Riley's motion to remand the case to state court.

B.  Lack of Federal Question Jurisdiction

A defendant may remove a case to federal court based on the presence of a federal question when a plaintiff asserts "a claim or right arising under the Constitution, treaties or laws of the United States."  28 U.S.C. § 1441(b).  Generally, we resolve issues of federal question jurisdiction by applying the "well-pleaded complaint rule."  Hart v. Bayer Corp., 199 F.3d 239, 243

---

[4]  Even if the district court did not properly consider Riley's motion to remand, for the purpose of this appeal, we give the district court the benefit of the doubt and assume that the court found a basis for removal jurisdiction before dismissing Riley's claims.

(5th Cir. 2000).  According to the well-pleaded complaint rule, if a plaintiff's complaint raises no issue of federal law, federal question jurisdiction is lacking, and removal is improper.  Id. at 244.  Thus, ordinarily, "[t]he fact that a federal defense may be raised to the plaintiff's action – even if both sides concede that the only real question at issue is created by a federal defense – will not suffice to create federal question jurisdiction."  Aaron v. Nat'l Fire Ins. Co. of Pittsburgh, 876 F.2d 1157, 1161 (5th Cir. 1989).  However, there are exceptions to the well-pleaded complaint rule.  For example, in Avco Corp. v. Aero Lodge No. 735, 390 U.S. 557 (1968), the Supreme Court held that, even if the plaintiff's complaint asserts only state law claims, removal jurisdiction is proper if federal law "so completely preempt[s] a field of state law that the plaintiff's complaint must be recharacterized as stating a federal cause of action."  Aaron, 876 F.2d at 1161 (discussing the Avco exception to the well-pleaded complaint rule).  Thus, a defense based on federal law creates federal question jurisdiction where the plaintiff's state law claims are completely preempted by federal law.  See id.

In this case, the district court may have asserted removal jurisdiction based on the Defendants' federal law defense that the LHWCA provides the exclusive remedy for Riley.  Riley correctly argues that the exercise of removal jurisdiction on

8

this basis is improper. Section 905(a) of the LHWCA provides, in part, that:

> The liability of an employer prescribed in section 904 of [the LHWCA] shall be exclusive and in place of all other liability of such employer to the employee . . . at law or in admiralty on account of such injury or death . . . .

33 U.S.C. § 905(a). In Aaron, this court considered whether federal question jurisdiction may arise where a defendant asserts that § 905(a) of the LHWCA bars a plaintiff's state law claims. 876 F.2d at 1164-66. After thorough analysis of Supreme Court precedent, this court concluded in Aaron that, because the LHWCA does not completely preempt state law claims, "[t]he LHWCA is, in this case, nothing more than a statutory defense to a state-court cause of action – the classic circumstance of non-removability." Id. at 1166. Thus, according to the clear rule of Aaron, the Defendants' LHWCA defense to Riley's state law claims is insufficient to create federal question jurisdiction. Id.; see also Garcia v. Amfels, Inc., 254 F.3d 585, 588 (5th Cir. 2001) (stating that "there is no question that the LHWCA does not create federal subject matter jurisdiction supporting removal"). Accordingly, the district court's exercise of removal jurisdiction over this case was improper to the extent the court based its jurisdiction on the presence of a federal question.

C.  Lack of Diversity Jurisdiction

A defendant may remove a case to federal court based on the diversity of the parties "only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought."  28 U.S.C. § 1441(b). For the purposes of this jurisdictional inquiry, the citizenship of a fraudulently joined defendant must be disregarded.  Badon v. R.J.R. Nabisco Inc., 224 F.3d 382, 389 (5th Cir. 2000).  Thus, a plaintiff cannot keep the case in state court by fraudulently joining an in-state defendant.

We assume, as the parties implicitly assume, that Hyland and F.A. Richard are not residents or citizens of Mississippi.[5] Ingalls, as a corporate resident of Mississippi, is the only in-state defendant, and Ingalls's presence in this case destroys the diversity of the Defendants.  The Defendants argue that Riley fraudulently joined Ingalls and, thus, that the citizenship of Ingalls should be disregarded for jurisdictional purposes.  The Defendants maintain that the district court did not err in exercising diversity jurisdiction over this case.  Riley counters that the district court lacked diversity jurisdiction over this case because Ingalls is not fraudulently joined.

---

[5]  Hyland is a citizen and resident of Alabama.  The Defendants assert that F.A. Richard is a corporate resident of Louisiana.  Although Riley argued before the district court that F.A. Richard was a non-diverse party because of its "very substantial business activity in Mississippi," Riley does not raise this argument on appeal, and it is, therefore, abandoned.

10

"The burden of persuasion placed upon those who cry 'fraudulent joinder' is indeed a heavy one."  <u>Hart</u>, 199 F.3d at 246 (internal citations and quotations omitted).  To establish fraudulent joinder of a non-diverse defendant, the removing party must show that there is <u>no possibility</u> that the plaintiff would be able to establish a claim against the non-diverse defendant in state court.  <u>In re Rodriguez</u>, 79 F.3d 467, 469 (5th Cir. 1996).[6] In making this determination, a court must resolve all disputed questions of fact and all ambiguities in the law in favor of the non-removing party.  <u>Id.</u>  "In essence, the district court, or this court on review, should conclude there is no federal jurisdiction and remand the case to the state court if either federal court cannot predict with absolute certainty that [the state] court would summarily dismiss the causes of action asserted against [the] defendant . . . ."  <u>Id.</u> (second alteration in original) (internal citations and quotations omitted).  In order to avoid "pretrying a case to determine removal jurisdiction," fraudulent joinder claims are generally resolved by "piercing the pleadings and considering summary judgment-type evidence such as affidavits and deposition testimony."  <u>Hart</u>, 199 F.3d at 246-47 (internal citations and quotations omitted). However, because the record in this case does not include such

---

[6]    An allegation of fraudulent joinder may also be based on outright fraud in the plaintiff's pleading of jurisdictional facts.  <u>In re Rodriguez</u>, 79 F.3d at 469.  The Defendants do not assert this ground for fraudulent joinder.

evidence, we are limited to a review of the allegations in the complaint in determining whether any possibility exists for Riley to establish a claim against Ingalls in state court.  Id. at 247.

As noted above, § 905(a) of the LHWCA provides that:

> The liability of an employer prescribed in section 904 of [the LHWCA] shall be exclusive and in place of all other liability of such employer to the employee . . . at law or in admiralty on account of such injury or death . . . .

33 U.S.C. § 905(a).  Pointing to the language of § 905(a), the Defendants argue that, because the LHWCA provides the exclusive remedy for Riley's claims against Ingalls, there is no possibility that Riley could establish a claim against Ingalls in state court.  In support of their argument, the Defendants rely heavily on this court's decision in Atkinson v. Gates, McDonald & Co., 838 F.2d 808 (5th Cir. 1988).  In Atkinson, this court affirmed a district court's dismissal of a plaintiff's state law claims asserted against her previous employer for that employer's termination of the plaintiff's LHWCA-based benefits.  Id. at 815. This court stated that "the LHWCA is plainly preemptive of any state law claim for intentional or bad faith wrongful refusal to pay benefits due under the [LHWCA], and this is true even in the absence of any expressly preemptive language."  Id. at 812.  Even though the plaintiff in that case was no longer employed by the defendant, the Atkinson court noted that the plaintiff's claim "necessarily presupposes an obligation to pay LHWCA benefits, and

12

hence necessarily arises out of her on-the-job injury." Id. at 811.

The plaintiff in Atkinson argued that an LHWCA-exclusivity rationale "is defective because it inevitably leads to the conclusion that there could be no common-law tort claim against an insurance company if, for example, its employee, in the course of investigating the plaintiff's claim for LHWCA compensation benefits, were to illegally enter plaintiff's residence to get needed evidence." Id. at 814. This court rejected this argument by explaining the scope of the LHWCA's preemption:

> [T]he obvious difference between the example[] posed by [plaintiff] . . ., and the case of bad faith refusal to pay compensation benefits, is that in the former class of case plaintiff's entitlement to recover in the tort action is in no way dependent on [her] having been entitled to compensation benefits or to the defendant's having violated the compensation statute. By contrast, in order to recover for bad faith or malicious failure to pay compensation benefits[,] there must have been an entitlement to such benefits or a violation of the compensation statute in the failure to pay them.

Id.

In the instant case, Riley argues that, because his state law claims are not dependent on his entitlement to compensation benefits, they fall within the former category described by the Atkinson court and are not preempted by the LHWCA. Riley does not allege that the Defendants violated the LHWCA or failed to pay LHWCA benefits. Rather, the essence of Riley's complaint is

13

that the close relationship between the Defendants and the Orthopaedic Group, along with the Defendants' ex parte communications with Riley's physician, improperly interfered with Riley's medical treatment.  According to Riley, the fact that his claims are asserted against his employer and his employer's self-insured administrator is a mere coincidence.[7]  Thus, Riley argues that he, like the injured person in the Atkinson plaintiff's hypothetical, has an "entitlement to recover in the tort action" that is "in no way dependent on his having been entitled to compensation benefits or to the defendant's having violated the compensation statute."  Id.

This court has never determined whether state law claims alleging tortious conduct arguably unconnected with an entitlement to LHWCA benefits fall within the scope of LHWCA preemption, and we need not do so here.  In the context of the fraudulent joinder inquiry, "[w]e do not decide whether the plaintiff will actually or even probably prevail on the merits, but look only for a possibility that he may do so."  Dodson, 951 F.2d at 42-43.  Moreover, we resolve all factual and legal ambiguities in favor of the non-removing party.  Id. at 42.

---

[7]    In his brief to this court, Riley states that his claim "is not for wages and it is not for compensation benefits; it is not for bad faith refusal to pay benefits as in Atkinson; it is for damages that are completely independent of the employer/employee relationship."

14

As our opinion in Atkinson makes clear, certain claims brought by an employee against his or her employer independent from the employee's entitlement to LHWCA benefits and not based on an alleged violation of the LHWCA by the employer are not preempted by the LHWCA. 838 F.2d at 814.[8] Riley's state law claims are based on the Defendants' close relationship with the Orthopaedic Group and the Defendants' alleged interference with Riley's medical treatment. At least one of those claims, which we discuss below, appears to be independent from Riley's entitlement to LHWCA benefits. Thus, our opinion in Atkinson suggests some possibility that at least one of Riley's claims is not preempted by the LHWCA.

As an example, we consider Riley's state law claim for intentional interference with contract. In support of this claim, Riley's petition asserts that "he had a contract for

_____

[8] The First Circuit's decision in Martin v. Travelers Insurance Co., 497 F.2d 329 (1st Cir. 1974), is consistent with our reasoning in Atkinson. In Martin, the plaintiff received compensation, in the form of three drafts, from the insurer of his former employer pursuant to the LHWCA. Id. at 330. Two weeks after the drafts were deposited and substantially drawn upon by the plaintiff, the insurer stopped payment on the drafts. Id. The plaintiff sued the insurer for infliction of mental and emotional suffering because of his "financial embarrassment due to the fact that he had written checks which had become worthless." Id. at 330, 331 n.1. The Martin court held that the plaintiff was not precluded under the LHWCA from pursuing his state law claim because the plaintiff's complaint was not based on the insurer's failure to pay LHWCA benefits. Id. at 330. Rather, the court emphasized that "the crux of the complaint here is the insurer's callous stopping of payment without warning when it should have realized that acute harm might follow." Id. at 331.

15

provision of medical care services with [Dr. Wiggins] and that the actions of the [Defendants] constituted an intentional interference with his contract for receipt of medical attention and are therefore actionable."  Under Mississippi law, "[a]n action for tortious interference with contract ordinarily lies when a party maliciously interferes with a valid and enforceable contract, causing one party not to perform and resulting in injury to the other contracting party."  Hollywood Cemetery Ass'n v. Bd. of Mayor and Selectmen of the City of McComb City, 760 So. 2d 715, 719 (Miss. 2000).  To establish this tort, Riley must show: (1) that the actions of the Defendants were intentional and willful, (2) that the actions were calculated to cause injury to Riley, (3) that the actions were without right or justifiable cause on the part of the Defendants, and (4) that Riley suffered actual injury or loss.  Id.

Assuming that Riley can demonstrate that he had an enforceable contract with Dr. Wiggins for medical care, we can imagine facts which, if proven, would establish tortious interference with a contract in this case.  Riley may be able to show that the Defendants intentionally and willfully interfered with Riley's medical treatment in order to cause injury to Riley without right or justifiable cause.  Furthermore, such an interference raises the possibility of actual damages which are independent from Riley's entitlement to LHWCA benefits.  For example, a mis-diagnosis caused by tortious interference could

16

lead to inadequate medical care.  Inadequate care may precipitate additional injuries, both physical and mental, which are unrelated to the original injury suffered on the job.  A misdiagnosis also may potentially cause a patient to suffer more pain than is necessary and to expend extra time and resources in seeking additional medical care.  Moreover, if Riley can establish a claim for tortious interference, he may be entitled to punitive damages in addition to the actual damages caused by the interference.  In this way, Riley's claim for tortious interference with a contract raises the possibility of damages that are independent from his entitlement to LHWCA benefits and thus raises the possibility that at least one of Riley's claims is not preempted by the LHWCA.[9]

Additionally, we cannot find any provisions of the LHWCA which appear to penalize the kind of conduct alleged here.  As the Defendants correctly note, § 914 of the LHWCA provides the exclusive remedy for bad faith wrongful refusal to pay benefits due under the LHWCA.  See 33 U.S.C. § 914; Atkinson, 838 F.2d at 812.  However, at least one of Riley's claims may not be based on Ingalls's refusal to pay LHWCA benefits.  The LHWCA also provides a remedy for employees when an employer knowingly and willfully makes a false statement or misrepresentation for the purpose of

---

[9]  We recognize that some of Riley's other claims may be preempted, but we need not consider them.  The possibility that one claim is not preempted by the LHWCA is enough to establish a chance of recovery against Ingalls in state court.

17

reducing, denying, or terminating compensation benefits. <u>See</u> 33 U.S.C. § 931(c); <u>Atkinson</u>, 838 at 811. Like § 914, this provision encompassing false statements and misrepresentations does not clearly cover the conduct which forms the basis of Riley's claims. Because at least one of Riley's claims may be unconnected with compensation benefits, we cannot say that no possibility exists for Riley to show that any such claim is not preempted by these LHWCA provisions.

For these reasons, taking all allegations set forth in Riley's complaint as true and resolving all legal ambiguities in Riley's favor, we conclude that Riley's complaint raises the possibility that Riley could succeed in establishing at least one claim against Ingalls in state court. Thus, there is no fraudulent joinder, and we cannot disregard Ingalls's citizenship for the purposes of our jurisdictional inquiry.[10] Accordingly, the district court's exercise of removal jurisdiction over this case was improper to the extent the court based its jurisdiction on the diversity of the parties. This conclusion, coupled with our conclusion that federal question jurisdiction is lacking, leaves no possible basis for removal jurisdiction in this case.

---

[10] This conclusion is consistent with our holding in <u>Aaron</u> that the LHWCA does not create federal question jurisdiction supporting removal. If the Defendants' LHWCA defense is insufficient to raise federal question jurisdiction, such a defense should not be sufficient to raise diversity jurisdiction by way of fraudulent joinder. We will not allow the Defendants to make an end run around the clear rule of <u>Aaron</u>.

18

Thus, the district court erred by not remanding the case to state court.[11]

### III.  Conclusion

For the foregoing reasons, we find no basis for removal jurisdiction in this case.  Accordingly, we VACATE the district court's dismissal of Riley's claims and REMAND the case to the district court with instructions to remand the case to state court.  Costs shall be borne by the Defendants.

---

[11]  Because we find in Riley's favor on this issue, we need not address Riley's additional claims that the district court deprived Riley of due process at the March 2001 hearing and that there was a defect in the removal procedure.