# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**
August 5, 2014

Lyle W. Cayce
Clerk

No. 13-20282

ERIC J. SPENCER; TATIUS BELLARD,

Plaintiffs - Appellants

v.

SCHMIDT ELECTRIC COMPANY,

Defendant - Appellee

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:11-CV-4181

Before KING, SOUTHWICK, and GRAVES, Circuit Judges.

PER CURIAM:*

Eric Spencer and Tatius Bellard, former employees of Schmidt Electric Company, appeal from the district court's grant of summary judgment for Schmidt on Spencer's claims of hostile work environment and retaliation and Bellard's claim of racial discrimination. We AFFIRM.

## FACTUAL & PROCEDURAL BACKGROUND

Schmidt is an electrical contractor with headquarters in Austin, Texas. It was a subcontractor to Vaughn Construction on a construction project at the

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 13-20282

M.D. Anderson building in Houston, Texas. Spencer and Bellard worked at the M.D. Anderson project while they were employed by Schmidt. All of Schmidt's employees were represented by the International Brotherhood of Electrical Workers #716. A collective bargaining agreement controlled the employment relationship between the union, its workers, and Schmidt.

Schmidt had a written policy stating it would provide equal employment opportunity to all persons in accordance with applicable law. Schmidt also had a written harassment-free workplace policy with procedures instructing employees to notify a supervisor, human resources manager, or any other Schmidt manager or employee in a supervisory or management position immediately if they experienced or witnessed harassment. Schmidt's policy provided that harassment, discrimination, or threats of any kind to customers, supervisors, or fellow employees would be ground for immediate dismissal. The policy also set out Schmidt's safety approach, instructing employees to follow all safety policies and procedures for each jobsite. Both Spencer and Bellard signed an acknowledgment they had received a copy of Schmidt's employment policy and agreed to abide by it.

Spencer began working for Schmidt in September 2010 as an electrician apprentice. Jean Machen and David Vidrine served as Spencer's foremen while they worked at the M.D. Anderson construction site. Spencer is African American, while the two foremen are white. Spencer testified in his deposition that Machen and Vidrine repeatedly made racist comments to him and harassed him in other ways because of his race. For example, he claimed Vidrine said that Spencer lived "by the Tree of Love," "where they used to hang black people from." Spencer testified there were nooses left around the job site, that he was required to repeat tasks without any reason, and he was mocked about the quality of his work. On December 9, 2010, Machen forwarded a text

2

message to various people including Spencer. Spencer finally opened the text on December 20 and found it contained a picture of a cartoon Santa Claus in a white hood, holding a noose and standing in front of a burning cross. He testified that Vidrine and Machen later cornered him in a room and asked to whom he sent the text message and who else knew about it.

Spencer informed his union steward, J.D. Brown (who was not a Schmidt employee), about the text message. He did not report the message to anyone employed at Schmidt. Brown spoke with Spencer on December 21 to inform him he had spoken about the text message with Jerry Borden, a superintendent at Schmidt. Spencer testified Brown relayed to him that Borden had stated Schmidt intended to "stand behind their foreman" and "do nothing" about Spencer's complaint. According to Spencer, Brown informed him they had done all they could do and that he could go to the EEOC. Brown disputes Spencer's account and testified that while he did speak with Borden and Spencer, he did not tell Spencer that Schmidt would do nothing about the harassment. Brown testified he told Spencer to put his complaint in writing, wait for an investigation, and that if the investigation was not satisfactory, he had the right to go to the EEOC.

Spencer filed a complaint with the EEOC on December 27, 2010, after making the single complaint to Brown and without going directly to anyone in management at Schmidt. On December 28, 2010, Spencer left his position at Schmidt because of "racial tension and racial hostility." Sometime between December 22 and January 3, the general superintendent of Schmidt, Benhart Frank, became aware of the harassing text message. Frank called Spencer on January 3 and made him an unconditional offer for him to return to work, apologizing for the behavior of Machen and Vidrine and explaining he was on his way to Houston to fire them. Frank repeated the offer of reemployment to

the union and called Spencer again on January 4 to ask him to return to work. Frank terminated Machen and Vidrine on January 5 for violating Schmidt's employment policy. Spencer declined Frank's offers to return to work.

The other plaintiff, Bellard, began working for Schmidt at the M.D. Anderson construction project as a journeyman electrician in May 2010. On October 26, 2010, Schmidt conducted a safety training session at the M.D. Anderson project which covered, among other things, ladder safety. The session instructed that "[i]f we are working over the 6ft height or over the belt buckle rule we now have to be tied off and have a person holding the bottom of the ladder." Another training session was conducted on December 8, 2010, also covering ladder safety. The agenda stated that all fall-protection violations would from then on be handled with zero tolerance. There would be no more warnings, and an employee violating fall-safety rules would be terminated. Bellard attended both training sessions.

On January 17, 2011, Bellard violated a safety rule by standing on the next-to-the-top rung of a six-foot ladder without being tied-off. He was reprimanded by Vaughn Construction safety personnel and received an employee warning notice providing for his dismissal. Schmidt terminated Bellard's employment on January 18. In his deposition, Schmidt's general superintendent Frank testified that M.D. Anderson and Vaughn Construction made decisions about safety violations and that they would be treated with no tolerance. Frank, though, made the decision to terminate Bellard based on his investigation of the safety violation. Frank testified that when Bellard was found on the top of the ladder, he told the Vaughn safety officer "send me home, I'm looking for a vacation" and that he could draw unemployment. Vaughn's safety officer told Schmidt's safety director that Bellard had no respect for safety; it would not suffice to send Bellard home for three days as punishment

4

for the safety infraction. Vaughn Construction requested that Bellard be removed from the worksite. Frank testified that Bellard's infraction could have been "a normal safety infraction" had Bellard signed the violation and gone back to work, but that the comment and disregard to safety led to his termination.

Spencer and Bellard, along with a third plaintiff not present in this appeal, filed suit against Schmidt in state district court, alleging race discrimination, harassment, retaliation, and hostile work environment under Title VII of the Civil Rights Act of 1964 and Chapter 21 of the Texas Labor Code. Schmidt removed the case to the United States District Court for the Southern District of Texas. Summary judgment was granted for Schmidt on each of the plaintiffs' claims. Spencer appeals the denial of his claims of a hostile work environment and retaliation, while Bellard appeals the denial of his claim for racial discrimination.

## DISCUSSION

We review a district court's grant of summary judgment *de novo*, applying the same standards as the district court. *Albemarle Corp. v. U.S. Steel Workers ex rel. AOWU Local 103*, 703 F.3d 821, 824 (5th Cir. 2013). Summary judgment is appropriate "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).

### I.    *Spencer's claim of a hostile work environment*

A hostile work environment claim requires proof of:

> (1) membership in a protected group; (2) harassment (3) based on
> a factor rendered impermissible by Title VII; (4) the harassment
> affected a term, condition, or privilege of employment; and (5) the

employer knew or should have known of the harassment yet failed to address it promptly.

*Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 654 (5th Cir. 2012).

If the harasser is plaintiff's supervisor, though, and not a co-worker, liability depends on certain other factors:

> If the supervisor's harassment culminates in a tangible employment action, the employer is strictly liable. But if no tangible employment action is taken, the employer may escape liability by establishing, as an affirmative defense, that (1) the employer exercised reasonable care to prevent and correct any harassing behavior and (2) that the plaintiff unreasonably failed to take advantage of the preventive or corrective opportunities that the employer provided.

*Vance v. Ball State Univ.*, 133 S. Ct. 2434, 2439 (2013).

At issue here is the district court's determination that the foremen who harassed Spencer were his supervisors, but that Schmidt was not liable for the harassment because it was entitled to the affirmative defense established by the Supreme Court in *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742 (1998) and *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998). The district court held that the foremen were not a part of management and did not have hiring or firing power, but concluded they were supervisors based on the evidence that they were tasked with leading the work of other employees. *See Celestine v. Petroleos de Venezuella*, 266 F.3d 343, 353-54 (5th Cir. 2001). Accordingly, the court held that Spencer did not have to prove that Schmidt was aware of the harassment and had failed to address it. Even so, Spencer had failed to take advantage of the company's available corrective procedures.

While this appeal was pending, the Supreme Court issued a decision that clarified how to determine whether a person is a supervisor in a Title VII claim for workplace harassment. *See Vance*, 133 S. Ct. at 2439. "Because this court

must apply the law current at the time of its decision, the [*Vance*] decision binds this court." *Nations v. Sun Oil Co. (Delaware)*, 695 F.2d 933, 936 (5th Cir. 1983). "It is well established that an appellate court is obligated to take notice of changes in fact or law occurring during the pendency of a case on appeal . . . ." *Concerned Citizens of Vicksburg v. Sills*, 567 F.2d 646, 649-50 (5th Cir. 1978) (quotation marks omitted).

In *Vance*, the Court held "that an employee is a 'supervisor' for purposes of vicarious liability under Title VII if he or she is empowered by the employer to take tangible employment actions against the victim." *Vance*, 133 S. Ct. at 2439. A tangible employment action is defined as "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Id.* at 2442 (quoting *Ellerth*, 524 U.S. at 761). The court expressly rejected "the nebulous definition of a 'supervisor' advocated in the EEOC guidance and substantially adopted by several courts of appeals." *Id.* at 2443 (citation omitted). The rejected EEOC standard would categorize someone as a supervisor if the person was either "authorized 'to undertake or recommend tangible employment decisions affecting the employee,' . . . *or* (2) [was] an individual authorized 'to direct the employee's daily work activities.'" *Id.* at 2455 (Ginsburg, J., dissenting) (quoting EEOC, Guidance on Vicarious Employer Liability For Unlawful Harassment by Supervisors, 8 BNA FEP Manual 405:7654 (Feb. 2003)).

Schmidt argued to the district court that the foremen were not supervisors and, accordingly, Spencer should be required to prove Schmidt's knowledge of the hostile work environment and had failed to address it. The district court never reached that argument because of its reliance on caselaw, now invalidated by *Vance*, that individuals were supervisors if they had

"immediate (or successively higher) authority over the harassment victim." *Celestine*, 266 F.3d at 353.  The *Vance* decision was handed down after the district court's decision but prior to the briefing in this court.  While Spencer did not discuss the consequences of *Vance*, Schmidt argued *Vance* mandated the conclusion that the foreman were not supervisors and that Spencer's claim would fail due to his inability to demonstrate Schmidt's knowledge of the harassment and failure to act.  We will consider the issue.

In making its pre-*Vance* determination on supervisors, the district court concluded the foremen were not a part of management and did not have hiring and firing power.  We agree, and find that the foremen here did not have power to take tangible employment actions against Spencer.  Frank testified that while foremen may give employees direction on how to do jobs, he does not consider them to be supervisors because they do not hire and fire.  Brown testified that foremen did not have the ability to hire.  Though they had some authority to fire, it was an indirect right that required going through the general foreman who in most cases had also to go up the ranks for permission to fire an employee.  Spencer testified he was "under the impression" the foremen could fire him, but based that opinion on foreman he worked with in the past for other contractors.  He further stated he believed they could fire by "pick[ing] up the phone, call the office," and ask to get a person laid off.  His testimony does not create a fact issue as to whether the foreman could fire, but supports Frank and Brown's testimony that foreman had to go up the ranks for permission to fire an employee.  There is no evidence that the foremen were empowered to take tangible employment actions against Spencer that would cause a significant change in his employment.  The evidence supports that a foreman was "authorized to direct the employee's daily work activities," which

is the definition of supervisor expressly rejected by the Supreme Court. *See Vance*, 133 S. Ct. at 2455 (Ginsburg, J., dissenting) (quotation marks omitted).

In summary, there is no evidence that the foreman were empowered by Schmidt to take tangible employment actions; the foremen do not qualify as supervisors for the purposes of Schmidt's vicarious liability under Title VII under the rule set out in *Vance*.

Because supervisors were not the harassers, we search for evidence that Schmidt knew or should have known of the harassment yet failed to address it promptly. *Hernandez*, 670 F.3d at 654. Schmidt argued that Spencer failed to prove knowledge and a failure to act, and Spencer did not present any alternative argument to the district court or on appeal. Spencer has relied solely on the argument that Schmidt was liable because the foremen were supervisors. Spencer presented no evidence on whether Schmidt management was aware of what the foremen were doing. Thus, Spencer failed to show a genuine dispute of material fact as to whether Schmidt knew or should have known of the harassing conduct yet failed to take prompt remedial action.

Because the foremen were co-workers, Schmidt cannot be liable for their actions without proof Schmidt knew or should have known of the harassment and failed to take prompt action, a fact Spencer has failed to establish. The district court did not err in granting summary judgment for Schmidt on Spencer's claim of hostile work environment.

## II.    *Spencer's claim of retaliation*

"Title VII prohibits retaliation against employees who engage in protected conduct," such as filing a charge of harassment or discrimination. *Perez v. Region 20 Educ. Serv. Ctr.*, 307 F.3d 318, 325 (5th Cir. 2002). To make out a *prima facie* case of retaliation, a plaintiff must demonstrate (1) he

engaged in an activity protected by Title VII; (2) the employer took an adverse employment action against the employee; and (3) there is a causal connection between the protected activity and the adverse employment action. *Brazoria Cnty. v. EEOC*, 391 F.3d 685, 692 (5th Cir. 2004).

The district court concluded Spencer had established the first element of his claim, as he had complained about the text message to a representative in the union.[1] The claim failed, however, because the court concluded Spencer had not established he suffered an adverse employment action. Such an action is one by the employer that "a reasonable employee would have found . . . [to be] materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe R.R. Co. v. White*, 548 U.S. 53, 68 (2006) (quotation marks omitted). "[N]ormally, petty slights, minor annoyances, and simple lack of good manners will not create such deterrence." *Id.* The court never discussed causation or whether the retaliation was by the employer.

Spencer complains of two incidents that allegedly occurred after he reported the text message to the union. The first was when Vidrine, Machen, and others cursed him. The district court did not err in concluding that curses are the sort of "minor annoyances [or] simple lack of good manners" not actionable for a Title VII retaliation claim. *Id.*

The next claimed incident was being cornered in a room on the jobsite by Vidrine and Machen. Spencer felt he could not get out. He thought it was "safe

---

[1] Neither party disputes the district court's conclusion that Spencer had met the first prong by engaging in protected activity. Accordingly, we do not address whether Spencer's reporting the text message to a union representative — rather than anyone in Schmidt's management — is sufficient to trigger Title VII's retaliation provision.

to answer their questions," though one of the men stood in the doorway while the other man circled him.  They did not directly threaten him, but one of them asked if Spencer felt he was safe.  He said he did not.  They also insisted he tell them to whom he had shown the text message and who else knew about it.  Spencer testified that he thought he was in danger because the work site included live voltage, but it was unclear whether he was referring to those dangers generally at the work site or specific dangers in the room at the time of this incident.  Regardless, a fact-finder could reasonably conclude that Vidrine and Machen were seeking to intimidate Spencer.  If that were the finding, such intimidation also would need to rise to a level that it "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination."  *Id.* (quotation marks omitted).  The district court found Vidrine's and Machen's conduct did not ascend to that level, but that was "a closer question" than the allegations he had been cursed by the foremen.

We do not decide whether the district court's conclusion was correct.  We note that even if the intimidation was of the requisite severity, Spencer must also establish that the employer was effectively the intimidator, and "that the desire to retaliate was the but-for cause of the challenged employment action." *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2528 (2013).  The district court never addressed these elements of Spencer's retaliation claim.  Even so, "we may affirm a summary judgment on any ground supported by the record." *McIntosh v. Partridge*, 540 F.3d 315, 326 (5th Cir. 2008).

We find it sufficient to resolve this issue based on the requirement that any alleged retaliation must be by the employer, Schmidt. *Long v. Eastfield Coll.*, 88 F.3d 300, 306 (5th Cir. 1996).  Title VII defines an "employer" to be "a person engaged in an industry affecting commerce who has fifteen or more employees . . . , and any agent of such a person . . . ." 42 U.S.C. § 2000e(b).

Not all employees of the employer are agents for purposes of a retaliation claim. *Canutillo Indep. Sch. Dist. v. Leija*, 101 F.3d 393, 401 (5th Cir. 1996) (analyzing Title VII law and applying it to a Title IX claim). We quoted the Supreme Court on this distinction: "Congress' decision to define 'employer' to include 'any agent' of an employer . . . surely evinces an intent to place some limits on the acts of employees for which employers under Title VII are to be held responsible." *Id.* (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 72 (1986). Therefore, employers are not "liable under Title VII for every discriminatory act committed by employees in the workplace" but only "in accordance with common law agency principles, for the acts of employees committed in furtherance of the employer's business." *Long*, 88 F.3d at 306.

An agent for these purposes is "someone who serves in a supervisory position and exercises significant control over . . . hiring, firing, or conditions of employment." *Canutillo Indep. Sch. Dist.*, 101 F.3d at 401. We have already discussed in the context of Spencer's hostile work environment claim that there is no evidence that the same two foremen who took the allegedly retaliatory action against Spencer were empowered by Schmidt to exercise any control over hiring, firing, or the conditions of Spencer's employment. The testimony revealed that foremen were charged with directing and overseeing Spencer's work on the job site. Specifically, there was testimony that members of the union were assigned to certain projects by the union and, per the collective bargaining agreement, Schmidt was then required to appoint foremen to oversee work on the site. Ben Frank stated he did not consider foremen to be supervisors because they could be a "foreman today and a journeyman tomorrow," and he did not always have the opportunity to get to know the employees on a site well-enough to select foremen based on ability or qualification. Frank's testimony makes it clear that status as a foreman was

not something that gave that individual authority over Spencer.  There were other Schmidt employees on site who controlled Spencer's employment status and had authority and responsibility to act in the interests of Schmidt.

It would violate common law agency principles to say that Schmidt should be held liable for the conduct of foremen, who were not empowered by Schmidt to represent the company's interests on site.  Because Vidrine's and Machen's actions cannot be attributed to the employer, Schmidt cannot be held liable under Title VII for the intimidation, even if it was in retaliation for Spencer's engaging in protected activity.

We conclude Spencer cannot make out a *prima facie* claim of retaliation due to his failure to allege that when Vidrine and Machen cornered and questioned Spencer, they were acting as agents for the employer Schmidt serving in a supervisory position in furtherance of the company's interests. The district court did not err in granting summary judgment for Schmidt on Spencer's retaliation claim.

### III.    *Bellard's claim of racial discrimination*

In order to establish a *prima facie* claim of racial discrimination under Title VII, a plaintiff must show he "(1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) . . . was treated less favorably than other similarly situated employees outside the protected group." *McCoy v. City of Shreveport,* 492 F.3d 551, 556 (5th Cir. 2007).  If a plaintiff makes a *prima facie* showing of discrimination, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for its action. *Id.* at 557.  The plaintiff then "bears the ultimate burden of proving that the employer's proffered reason . . . is a pretext . . . ." *Id.*

13

The first three elements of Bellard's *prima facie* case are not in dispute — Bellard is African American, was qualified to work as an electrician, and was terminated by Schmidt. At issue is whether Bellard established he was treated less favorably than similarly situated employees who were outside his protected group. "[A]n employee who proffers a fellow employee as a comparator [must] demonstrate that the employment actions at issue were taken 'under nearly identical circumstances.'" *Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 260 (5th Cir. 2009). The employees being compared must have "held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable violation histories." *Id.* (citations omitted). If a difference between the plaintiff's conduct and that of the allegedly similarly situated employee accounts for the difference in treatment, the employees are not similarly situated for the purposes of the employment discrimination analysis. *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 221 (5th Cir. 2001).

Bellard's deposition testimony identified three Caucasian employees — Ed Albinese, John Heineken, and Robert Riley — who he alleges received three-day suspensions or were transferred to other job sites for similar safety infractions. His testimony, however, provides no evidence that those individuals' infractions occurred after implementation of the zero-tolerance policy for ladder safety violations, that they held the same job or had the same responsibilities, shared the same supervisor, or had comparable violation histories. Bellard provided no information other than Albinese's race and name. He stated Riley was his supervisor and that Heineken had an apprentice, indicating they did not, in fact, hold the same position or share the same supervisor. Finally, there was undisputed evidence that Vaughn Construction insisted Bellard be removed from the site because a three-day

No. 13-20282

suspension would not be sufficient.  There is no such evidence regarding the other three employees.  We agree with the district court's conclusion that Bellard cannot establish a *prima facie* claim of race discrimination.

Moreover, the district court identified that even if Bellard could make out a *prima facie* case, Schmidt met its burden of articulating a legitimate, nondiscriminatory reason for terminating Bellard which Bellard had not demonstrated was pretext.  Schmidt identified two legitimate reasons for terminating Bellard, that he knowingly violated a zero-tolerance safety policy and that Vaughn Construction asked Bellard be removed from the site based on his conduct following the safety infraction.  Frank stated that Schmidt terminated Bellard based on the circumstances of his safety violation, namely, Bellard's comments to the Vaughn Construction safety officer indicating his disregard for safety and causing Vaughn to request Bellard be removed from the site.  Bellard argued that other employees were disciplined less harshly for similar safety infractions, and he denied that he made the disrespectful comments or that he at least does not remember making them.  This does not establish, however, that Schmidt's reasons for terminating Bellard were pretext or that Schmidt fired Bellard with discriminatory motive.  "Simply disputing the underlying facts of an employer's decision is not sufficient to create an issue of pretext." *LeMaire v. Louisiana Dept. of Transp. & Dev.*, 480 F.3d 383, 391 (5th Cir. 2007).  Bellard does not establish pretext by arguing other employees were treated less harshly.  According to Frank, Bellard was terminated not just because of his safety infraction but because of his comments to the safety officer indicating his disregard for safety.  The district court did not err in granting summary judgment for Schmidt on Bellard's claim of racial discrimination.

The judgment of the district court is AFFIRMED.

GRAVES, Circuit Judge, concurring in part and dissenting in part:

I agree with the majority that the district court properly granted summary judgment to Schmidt on Bellard's race discrimination claim, for the reasons given by the majority.  I also agree that the district court properly granted summary judgment to Schmidt on Spencer's race discrimination claim, but I write separately because I do not think there is any need for us to determine whether Machen was a supervisor under *Vance v. Ball State Univ.*, 133 S. Ct. 2434 (2013).  Finally, I dissent from the majority's affirmance of the grant of summary judgment to Schmidt on Spencer's claim of retaliation.

I.      *Spencer's Hostile Work Environment Claim*

The majority concludes that the grant of summary judgment on Spencer's hostile work environment claim was correct because the record establishes that Machen is not a supervisor under *Vance*.  In *Vance*, the Supreme Court held "that an employee is a 'supervisor' for purposes of vicarious liability under Title VII if he or she is empowered by the employer to take tangible employment actions against the victim."  *Vance*, 133 S. Ct. at 2439.  A tangible employment action is "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits."  *Id*. at 2443 (quoting *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)).   The summary judgment record before us was created pre-*Vance*, when it was sufficient to show that an alleged harasser was a supervisor if he had "immediate (or successively higher) authority over the employee." *Celestine v. Petroleos de Venezuella SA*, 266 F.3d 343, 353-54 (5th Cir. 2001).  In my view, there is simply not enough evidence in the record about this worksite or the role of foremen to determine that Machen was not a

supervisor under *Vance*. Though the firing decisions are apparently ultimately made or approved by Schmidt managers, the record shows that foremen have some authority and input regarding firing decisions. The weight their recommendations carry is unclear. For example, when Spencer was escorted off the Anderson job site, he testified that Machen, a foreman, and Vidrine, a general foreman, were the employees who escorted him off the site, and that no other Schmidt managers were informed or involved. It is also unclear whether foremen have the authority to transfer employees to assignments with different responsibilities, which may make them supervisors under *Vance. See Vance*, 133 S. Ct. at 2443.

I would not reach the fact-intensive question of whether Machen is a supervisor, because there are alternative grounds for affirmance. Even under the harassment standards applicable to supervisors, the grant of summary judgment should be affirmed. While there is no question that the harassment of Spencer by Machen rose to the level of a hostile work environment, I would conclude that the district court correctly held that Schmidt was entitled to the *Ellerth/Faragher* affirmative defense to vicarious liability. *See Burlington Indus. Inc. v. Ellerth*, 524 U.S. 742, 765 (1998); *Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998).

In order to raise this affirmative defense, the employer must first show it took no adverse employment action against Spencer. *See Aryain v. Wal-Mart Stores Texas LP*, 534 F.3d 473, 480 (5th Cir. 2008). Spencer alleges that he was constructively discharged, which would preclude Schmidt from raising the affirmative defense. *See id.* In determining whether an employer's actions constitute a constructive discharge, we ask whether working conditions became "so intolerable that a reasonable person in the employee's position would have felt compelled to resign." *Pennsylvania State Police v. Suders*, 542 U.S. 129, 141 (2004); *see Aryain,* 534 F.3d at 480. To show constructive

discharge, a plaintiff must present "something more" than what is required to establish a hostile work environment claim. *Aryain,* 534 F.3d at 480. Here, Spencer failed to point to sufficient summary judgment evidence supporting a claim of constructive discharge. The only evidence he pointed to, apart from the same evidence establishing the hostile work environment, was that he was given some menial assignments and made to repeat the same task multiple times. While certainly annoying, this does not rise to the level of intolerable working conditions that would compel a reasonable employee to resign. *See Suders*, 542 U.S. at 141; *Aryain,* 534 F.3d at 480.

Since Spencer was not constructively discharged, Schmidt may assert the *Ellerth/Faragher* affirmative defense to vicarious liability. Under *Ellerth/Faragher*, an employer may avoid vicarious liability by showing that: (1) the employer exercised reasonable care to prevent and correct promptly any harassing behavior; and (2) the plaintiff unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer. *Ellerth*, 524 U.S. at 765; *Faragher,* 524 U.S. at 807. I would conclude, as the district court did, that Schmidt met both prongs. With regard to the first prong, Schmidt established that it exercised preventative action by disseminating anti-discrimination policies which prohibited discrimination and harassment and provided multiple avenues for complaints by employees, which Spencer does not argue are inadequate or unreasonable. *See Lauderdale v. Texas Dept. of Criminal Justice*, 512 F.3d 157, 164 (5th Cir. 2007). Further, Schmidt promptly corrected the harassing behavior. Specifically, within two weeks of Spencer opening the text message and informing the union of it, Ben Frank, the head of Schmidt, fired Machen for sending the text and Vidrine for being a general foreman who knew of the text but who did not inform his superintendent. This is sufficient to establish the first prong of the *Ellerth/Faragher* defense. Under the second prong, Schmidt must establish

that Spencer unreasonably failed to take advantage of any preventative or corrective opportunities made available by the employer. *Ellerth*, 524 U.S. at 765; *Faragher*, 524 U.S. at 807. Here, while Spencer notified the union of the text message, he did not alert anyone at Schmidt, and after receiving a secondhand report from his union steward that Schmidt was not taking action, he did not follow any of the multiple avenues for complaint to Schmidt management. *See Lauderdale*, 512 F.3d at 164-65. Further, Frank also repeatedly offered Spencer his job back after Schmidt fired Machen and Vidrine, including offering to transfer Spencer to a different worksite if he so desired. In these circumstances, particularly given the prompt and effective corrective action taken by Schmidt, I agree with the district court that Schmidt established both prongs of the *Ellerth/Faragher* defense and was entitled to summary judgment on Spencer's hostile work environment claim.

## II.   *Spencer's Retaliation Claim*

I disagree with the majority that summary judgment was correctly granted to Schmidt on Spencer's claim of retaliation. The anti-retaliation provisions of Title VII are broader than the anti-discrimination provisions. *See Burlington Northern & Santa Fe R.R. Co. v. White*, 548 U.S. 53, 66-67 (2006). To establish a prima facie case of retaliation, a plaintiff must show that: (1) he participated in an activity protected by Title VII; (2) his employer took materially adverse action against him; and (3) a causal connection exists between the protected activity and the materially adverse action. *Aryain*, 534 F.3d at 484. A materially adverse action is one that "a reasonable employee would have found . . . [to be] materially adverse, which in this context means it might well have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington Northern*, 548 U.S. at 68 (internal quotation marks omitted). "Trivial harms" do not rise to the level of material adverseness. *Id*. "An employee's decision to report discriminatory behavior

cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience." *Id.* "[T]he significance of any given act of retaliation will often depend upon the particular circumstances. Context matters." *Id.* at 69.

I agree with the majority that most of Spencer's allegations fail to rise to the level required to show that a materially adverse action was taken against him, including the allegations that he was cursed at by Vidrine, Machen, and other employees. However, Spencer also alleged that an incident where he was "cornered" and questioned by Machen and Vidrine after he reported the text to the union constituted retaliation. A review of the record indicates that this claim should survive summary judgment. Spencer testified he opened the text message and reported it to a union representative, J.D. Brown, who reported the issue to a Schmidt manager within a day. Spencer testified that subsequently, he was cornered by Machen, the sender of the text, and Vidrine, a general foreman, in an elevator room where he was working. He testified that Machen "proceeded to make a circle around me while David Vidrine engaged me in conversation." They asked him who he sent the text message to, who else knew about it, and "did I feel like . . . I was safe there." He testified that he did not feel he could leave the room if he wanted to because "one was blocking the entrance and the other one was orbiting my body." Though he testified that he answered their questions and did not ask to leave, he also testified that he told them he did not feel safe at the job.

On the heels of being sent a text by Machen including explicit racist and threatening imagery, including Ku Klux Klan symbolism, a burning cross and a noose, Spencer was cornered and questioned by the sender and a general foreman about who he had told about the text and whether he felt safe, while one stood in front of the door and one "orbited" him in the room. I would conclude that a reasonable jury could find that this incident could make a

"reasonable employee" feel actually threatened for reporting an incident of racial harassment, which could deter a reasonable employee from making or supporting a complaint and thus rises to the level of material adverseness under *Burlington Northern*. *Id*. at 67. Spencer has raised sufficient evidence about whether this action constituted material adverseness to survive summary judgment.

I would also find that the other prongs of the retaliation standard are met, sufficient to survive summary judgment. *See Aryain*, 534 F.3d at 484. Spencer's complaint to the union, which he made with the expectation that the union would raise the complaint with Schmidt on his behalf, constituted "oppos[ing] any practice made an unlawful employment practice" and is protected activity. *See* 42 U.S.C. § 2000e-3; *see Long v. Eastfield Coll.*, 88 F.3d 300, 304 (5th Cir. 1996). Further, Spencer testified that after he opened the text on December 20 and alerted the union, who notified Schmidt by at least December 21, Machen and Vidrine cornered him and asked him who he had shown the text message to and who else knew about it. While the record is not clear on which day the confrontation happened, it is clear that it happened between December 21 and December 28. This "very close" temporal proximity between the complaint and the alleged retaliation, *see Clark County School District v. Breeden*, 532 U.S. 268, 273 (2001), together with Machen and Vidrine's questioning directly referencing the text and who Spencer had told about the text, are sufficient to raise a fact issue as to whether or not they acted because of the complaint to the union.

The majority concludes that summary judgment is appropriate because the retaliation is not attributable to Schmidt. As the majority recognizes, the district court did not reach this issue, and the parties do not address it on appeal. This question depends on whether Machen and Vidrine "serve[] in a supervisory position and exercise[] significant control over . . . hiring, firing, or

conditions of employment." *See Long*, 88 F.3d at 306. As I stated above, the question of whether Machen and Vidrine are supervisors is a fact-intensive issue. The retaliatory incident involved Machen, a foreman, as well as Vidrine, a general foreman. The record reflects that general foremen may supervise the work of other foremen, have input into hiring and firing decisions, and may be able to transfer, discipline or fire employees. Thus, I would also conclude that there are fact issues precluding us from concluding that Vidrine's and Machen's alleged retaliation against Spencer is not attributable to Schmidt.

Finally, Schmidt has not indicated that there could be any other motivation for Machen and Vidrine's intimidation and implicit threatening of Spencer, and it is difficult to imagine any other motivation, other than to frighten him and dissuade him from pursuing further corrective action regarding the alleged discrimination. There are sufficient fact issues surrounding the incident to warrant denial of summary judgment on the issue of retaliation.

### III.    *Conclusion*

For the foregoing reasons, I concur in the majority's decision in part and agree that summary judgment was correctly granted on Bellard's race discrimination claim and Spencer's hostile work environment claim. I respectfully dissent with regard to the grant of summary judgment on Spencer's claim of retaliation, which I would reverse and remand.