# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

————

No. 16-60230

————

CASSANDRA LEE MORROW,

>Plaintiff - Appellant

v.

KROGER LIMITED PARTNERSHIP I; MICKEY MANCINI,

>Defendants - Appellees

_____

SAVANNAH BARRON,

>Plaintiff - Appellant

v.

KROGER LIMITED PARTNERSHIP I; MICKEY MANCINI,

>Defendants - Appellees

————

Appeals from the United States District Court
for the Northern District of Mississippi
USDC No. 3:13-CV-276
USDC No. 3:13-CV-305

————

Before JOLLY, HIGGINBOTHAM, and GRAVES, Circuit Judges.

United States Court of Appeals
Fif h Circuit

**FILED**

March 14, 2017

Lyle W. Cayce
Clerk

No. 16-60230

PER CURIAM:*

Cassandra Morrow and Savannah Barron appeal the district court's grant of Kroger's motion for summary judgment. In granting the motion, the district court found that Kroger meat market manager Mickey Mancini was not a "supervisor" for purposes of Title VII of the Civil Rights Act of 1964. Consequently, Kroger was not strictly liable for Mancini's conduct. Morrow and Barron also appeal the district court's dismissal of their intentional interference with contractual relations claims against Mickey Mancini pursuant to Federal Rule of Civil Procedure 12(b)(6). The district court found that Morrow and Barron's claims against Mancini were preempted by the Labor Management Relations Act ("LMRA"). We AFFIRM the district court.

## BACKGROUND

Morrow and Barron allege that they were sexually harassed by Mancini, who was meat market manager at Kroger's Hernando, Mississippi store. Morrow was hired by Kroger as a deli clerk on January 21, 2010. According to her, Mancini began to harass her during the summer of 2011 after she transferred to the meat department. Barron was hired as a part-time seafood clerk on September 22, 2011. Subsequently, she began working with Mancini. She claims that Mancini's harassment began soon after she was hired. Morrow and Barron claim that Mancini made inappropriate comments, groped them, and texted and called them after hours.

On August 10, 2012, Morrow and Barron filed an internal complaint against Mancini with Kroger's human resources department. Kroger

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

subsequently suspended Mancini and opened an investigation. After concluding its investigation, Kroger informed Morrow and Barron that, though some of Mancini's actions were inappropriate, his conduct did not rise to the level of actionable sexual harassment because most of their allegations could not be corroborated. However, Kroger issued Mancini a "constructive advice," or formal write-up for misconduct; suspended him for eleven days without pay; and warned him that he would be terminated if he engaged in similar conduct. Kroger then gave Morrow and Barron the choice to: (1) remain in the meat department under Mancini, (2) transfer to another department; or (3) transfer to another Kroger store.

Morrow and Barron initially agreed to stay in the meat department. But, because of what they perceived as a hostile work environment created by Mancini and store manager Ahmad Akbary, Barron eventually chose to transfer to a different store and Morrow chose to resign.

On November 8, 2013, Morrow filed suit against Kroger and Mancini. Against Kroger, Morrow alleged sexual harassment, retaliation, sex discrimination, and constructive discharge pursuant to Title VII. Against Mancini, Morrow alleged intentional interference with contractual relations. On December 18, 2013, Barron filed suit against Kroger and Mancini on similar grounds. Morrow and Barron's cases were consolidated, and on March 25, 2015, the district court granted Mancini's motion to dismiss pursuant to Rule 12(b)(6). On the same day, the district court also granted Kroger's motion for summary judgment. Morrow and Barron timely appeal from the district court's judgment.

## STANDARD OF REVIEW

We review "an order granting summary judgment *de novo*." *Cooley v. Hous. Auth. of Slidell*, 747 F.3d 295, 297 (5th Cir. 2014). We review a district

No. 16-60230

court's dismissal of a complaint pursuant to Rule 12(b)(6) *de novo*. *Doe ex rel. Magee v. Covington Cty. Sch. Dist. ex rel. Keys*, 675 F.3d 849, 854 (5th Cir. 2010) (en banc).

## DISCUSSION

Morrow and Barron make three arguments on appeal: (1) The district court erred by finding that there were no genuine issues of material fact regarding whether Mancini was a supervisor for Title VII purposes; (2) if Mancini was a Title VII supervisor, Kroger has not established the *Faragher/Ellerth* affirmative defense that Morrow and Barron were unreasonable in delaying their report of sexual harassment; and (3) the district court erred by finding that their state-law intentional interference claim against Mancini was preempted by the LMRA. None of these arguments are persuasive.

### I.

The Supreme Court has stated that a Title VII supervisor is one who is "empowered [by the employer] . . . to take tangible employment actions against the victim, *i.e.*, to effect a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Vance v. Ball State Univ.*, 133 S. Ct. 2434, 2443 (2013) (citations and quotations omitted).

In *Matherne v. Ruba Mgmt.*, 624 F. App'x. 835 (5th Cir. 2015) (per curiam), and in *Spencer v. Schmidt Elec. Co.*, 576 F. App'x 442 (5th Cir. 2014), we also commented on the meaning of Title VII supervisor. In *Matherne*, we found that an employee with the title "weekend manager" was not a Title VII supervisor, even though he had "some leadership responsibilities, including control over 'the book,' where managers 'would make comments . . . if anything

went wrong . . . .'" *Matherne*, 624 F. App'x at 840. In *Spencer*, we found that a foreman was not a Title VII supervisor even though he arguably had an "indirect right" to cause a tangible employment action by "going through the general foreman." *Spencer*, 576 F. App'x at 447-48. In *Spencer*, we also stated that the employee's subjective impression that his foreman could cause a tangible employment action did not make him a Title VII supervisor. *Id.*

Here, Kroger has proffered evidence that Mancini did not have the authority to take tangible employment actions, including "the authority to hire and fire in the meat department." According to Kroger, these powers were wholly vested in others—most notably, store manager Ahmad Akbary. Morrow and Barron have presented evidence that Mancini filled out performance evaluations; handled administrative tasks such as scheduling; boasted at a barbeque at his house that he could influence who was hired into the meat department; was consulted about hiring decisions; and may have had a close and friendly relationship with store manager Akbary. But this evidence does not show that Mancini had the authority to cause a tangible employment action as is required under *Vance*. At best, this evidence shows that Mancini had some leadership responsibilities in the meat department; Morrow and Barron subjectively believed that Mancini could cause a tangible employment action; and Mancini had some influence over Akbary, though Akbary and others ultimately took all tangible employment action. Because Morrow and Barron have presented no genuine issue of material fact regarding whether Mancini was a Title VII supervisor, we find that the district court did not err. In addition, since the district court did not err, we need not reach the issue of whether Kroger established a *Faragher/Ellerth* affirmative defense.

## II.

We also find that Morrow and Barron's state-law intentional interference claim against Mancini is preempted by the LMRA. "Section 301 of

the LMRA provides the requisite jurisdiction and remedies for individual employees covered under a collective-bargaining agreement between that individual's employer and the union." *Thomas v. LTV Corp.*, 39 F.3d 611, 616 (5th Cir. 1994). "[W]hen resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract, that claim must either be treated as a § 301 claim or dismissed as pre-empted by federal labor-contract law." *Allis-Chalmbers Corp. v. Lueck*, 471 U.S. 202, 220 (1985) (citations omitted). Furthermore, "[p]re-emption occurs when a decision on the state claim is inextricably intertwined with consideration of the terms of the labor contract or when the application of state law to a dispute requires interpretation of the collective-bargaining agreement." *Thomas*, 39 F.3d at 616.

Under Mississippi law, a claim of tortious interference with a contract arises when a plaintiff pleads: "(1) that the acts were intentional and willful, (2) that they were calculated to cause damage to the plaintiff in their lawful business, (3) that they were done with the unlawful purpose of causing damage or loss, without right or justifiable cause on the part of the defendant, and (4) that actual damage and loss resulted." *Hollywood Cemetery Ass'n v. Bd. of Mayor and Selectmen of McComb City*, 760 So. 2d 715, 719 (Miss. 2000). "[T]he plaintiff must also prove that an enforceable obligation existed between the plaintiff and another party." *Id.*

Here, Morrow and Barron's claim would necessarily require analysis of the terms of their collective bargaining agreement since, under Mississippi law, they must prove the existence of an enforceable obligation between Kroger and them. *Id.* As the district court correctly stated, "Plaintiff's employment with Kroger is governed by a collective bargaining agreement ("CBA") entered into between Kroger and the United Food & Commercial Workers Union, Local 1529. Because the CBA is the only contract governing Plaintiffs' employment

No. 16-60230

with Kroger, it follows that Plaintiffs' claim for intentional interference with a contract must refer to the CBA." Because Morrow and Barron must prove the existence of an enforceable agreement, the CBA is the only contract governing Morrow and Barron's employment, and "pre-emption occurs . . . when the application of state law to a dispute requires interpretation of the collective-bargaining agreement," we conclude that the district court did not err. *See Thomas,* 39 F.3d at 316.

## CONCLUSION

For the reasons stated above, we AFFIRM the district court.