**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 17a0329n.06

Case No. 16-6387

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

**FILED**

Jun 09, 2017
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) | |
| Plaintiff-Appellant, | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF TENNESSEE |
| v. | ) ) | |
| AUTOZONE, INC., et al., | ) ) | |
| Defendants-Appellees. | ) | |

BEFORE: GIBBONS, SUTTON, and COOK, Circuit Judges.

PER CURIAM. The Equal Employment Opportunity Commission maintains that an AutoZone store manager, who allegedly engaged in sexist behavior, supervised several employees whom he did not hire and could not fire, promote, reassign to a significantly different position, or cause a significant change in their benefits. Because he did not take any tangible employment action against his co-workers and indeed had no authority to do so, the manager was not a supervisor under Title VII and thus AutoZone cannot be liable for the conduct alleged. Even if that were not the case, even in other words if the manager had been a supervisor of his victims, AutoZone established an affirmative defense to the claim. We affirm.

I.

Robyn McEuen began working for AutoZone Store #335 in Cordova, Tennessee, in March 2010 and soon earned a promotion to a commercial specialist position. LaKindal Smith

started work for AutoZone as a parts sales manager in July 2011.  And AutoZone hired Cherrelle Green (neé Willett) as a commercial driver in April 2012.

In May 2012, AutoZone transferred Gustavus Townsel to the store and made him the store manager.  Ira Graham was the district manager for the store and visited at least once a week.  Townsel could hire new hourly employees and write up employees at the store for misbehaving, but both sides agree that he could not fire, demote, promote, or transfer employees. Authority over firing, promoting, and transferring rested with Graham.

According to Smith, Townsel began making lewd and obscene sexual comments to her in August 2012.  Townsel allegedly told her, for example, that he was going to schedule Smith and himself for a 5:15 AM shift when he would "take [her] in the bathroom and wear that pussy out." R. 10 at 4.  Townsel repeatedly made sexual advances toward Smith.  She claims that Townsel, around August 17, 2012, grabbed her around the waist and pulled her toward him from behind so that her rear end pressed against his front.  Smith responded to Townsel's alleged harassment by "laugh[ing] it off" and gently rebuffing him.  R. 50-8 at 3.  In September 2012, Townsel propositioned her over the phone and several times at work.  Around September 25, Townsel grabbed Smith in her genital area, and she pushed him away.  On September 27, Townsel rubbed his hand down Smith's back and said that "I'm not gonna be your boss anymore so I can really get that pussy now."  R. 50-8 at 6.

In late September, Smith told Chad Berry, a commercial sales manager at another AutoZone store, about Townsel's harassment.  The co-worker did not take any action after speaking with Smith because "[s]he didn't seem upset" and wasn't making a sexual harassment complaint, which he and Smith would have to take up the chain of command or to human resources.  R. 50-11 at 2.  In mid- to late-October 2012, Smith told Graham that Townsel was

harassing her. Graham talked to McEuen, who confirmed that Townsel had made offensive comments that McEuen would just brush off.

On Friday, November 2, 2012, Graham informed Melody Deener, the regional human resources manager, that Townsel was "saying stuff in the store." R. 49-3 at 4. The following Monday, Graham told Smith to call Deener. During the phone call, Smith complained about operational issues such as AutoZone's new scheduling system. In the afternoon, Smith faxed Deener a letter, at Deener's request, that outlined her complaints. Smith's three-page letter mainly discusses the operational issues but concludes with a brief section alleging that an unidentified person at work had sexually harassed her.

Deener went to the Cordova store the next day, November 6, 2012, to speak to Smith. Smith reported Townsel's harassment. Deener interviewed McEuen and Willett, who both said that Townsel had made lewd sexual comments. Willett also told Deener that Townsel had tried to show her pornography on his phone. Deener talked to Townsel, who denied harassing his female co-workers.

On November 14, 2012, Deener returned to the store and informed Smith that AutoZone would transfer Townsel out of the store on November 18. Smith said that she had no problem working with Townsel until his transfer because AutoZone would schedule an additional person to work on the days when they were both at the store. AutoZone transferred Townsel on November 18 and fired him on December 6, 2012.

The Commission filed a complaint alleging that AutoZone subjected Smith, McEuen, and Willett to sexual harassment. After discovery, AutoZone moved for summary judgment. The district court reasoned that Townsel was not a supervisor under Title VII, precluding the

3

company from being vicariously liable for his actions. It thus granted AutoZone's motion for summary judgment. The Commission appealed.

## II.

As this case comes to us, the parties share some common ground. No one denies that Townsel's behavior was repulsive. And no one denies that he got what he deserved when AutoZone fired him. The only questions are legal ones. First, was Townsel a supervisor of Smith, McEuen, and Willett or their co-worker? If Townsel was merely a co-worker of his victims, both parties agree that Title VII does not impose liability on AutoZone for Townsel's harassment. Second, even if Townsel was a supervisor under the statute, is AutoZone eligible for the affirmative defense to liability?

## A.

Under Title VII, "[i]f the harassing employee is the victim's co-worker, the employer is liable only if it was negligent in controlling working conditions"—that is, if the employer knew or should have known of the harassment yet failed to take prompt and appropriate corrective action. *Vance v. Ball State Univ.*, 133 S. Ct. 2434, 2439–42 (2013). Different rules apply if the harasser is the victim's supervisor. *Id.* at 2439. In those cases, a non-negligent employer may become vicariously liable if the agency relationship aids the victim's supervisor in his harassment. *Id.*; *see also Faragher v. City of Boca Raton*, 524 U.S. 775, 801–04 (1998); *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761–62 (1998).

Consistent with the district court's decision, AutoZone is not vicariously liable for Townsel's harassment because Townsel did not supervise any of the employees he harassed. "[A]n employee is a 'supervisor' for purposes of vicarious liability under Title VII if he or she is empowered by the employer to take tangible employment actions against the victim." *Vance*,

133 S. Ct. at 2439. Tangible employment actions are those that "effect a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Id.* at 2443 (quotation omitted). AutoZone did not empower Townsel to take any tangible employment action against his victims. Townsel could not fire, demote, promote, or transfer any employees. And he could not hire employees that AutoZone already employed, such as Smith, McEuen, and Willett. Townsel's ability to direct the victims' work at the store and his title as store manager do not make him the victims' supervisor for purposes of Title VII. *Id.*; *see, e.g.*, *Noviello v. City of Bos.*, 398 F.3d 76, 96 (1st Cir. 2005) (shift supervisor not a supervisor under Title VII); *Reynaga v. Roseburg Forest Prod.*, 847 F.3d 678, 689 (9th Cir. 2017) (lead millwright not a supervisor); *Chavez-Acosta v. Sw. Cheese Co.*, 610 F. App'x 722, 730 (10th Cir. 2015) (member of the leadership hierarchy not a supervisor).

Townsel, it is true, could initiate the disciplinary process and recommend demotion or promotion. But this is not one of those cases where "the employer may be held to have effectively delegated the power to take tangible employment actions to the employees on whose recommendations it relies." *Vance*, 133 S. Ct. at 2452; *see, e.g.*, *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 280 (4th Cir. 2015) (en banc) (holding that employee was a supervisor when any recommendation "would be rubber-stamped"). Graham visited the Cordova store once a week, actively participated in its management, scheduled shifts, and interacted with the employees Townsel harassed. He did not blindly delegate his responsibilities to Townsel or "merely sign[] the paperwork." *Vance*, 133 S. Ct. at 2446. Townsel's ability to influence Graham does not suffice to turn Townsel into his victims' supervisor. *See, e.g.*, *Velazquez-Perez v. Developers Diversified Realty Corp.*, 753 F.3d 265, 272–73 (1st Cir. 2014) (human resources

officer who advised the victim's actual supervisor was not a supervisor); *Spencer v. Schmidt Elec. Co.*, 576 F. App'x 442, 447–48 (5th Cir. 2014) (per curiam) (foreman who bragged about his ability to influence employment actions but had to go up the ranks to do so was not a supervisor); *McCafferty v. Preiss Enters., Inc.*, 534 F. App'x 726, 731 (10th Cir. 2013) (co-worker with potential to influence decisions was not supervisor when actual supervisor regularly visited the restaurant). And the ability to conduct performance evaluations does not turn Townsel into his victims' supervisor either. *See, e.g.*, *Morrow v. Kroger Ltd. P'ship I*, 2017 WL 1013072, at *2 (5th Cir. Mar. 14, 2017) (per curiam) (co-worker who filled out performance evaluations and boasted about his ability to influence hiring and promotion decisions not a supervisor); *Matherne v. Ruba Mgmt.*, 624 F. App'x 835, 840 (5th Cir. 2015) (per curiam) (manager who commented on performance and assigned responsibilities not a supervisor); *Weyers v. Lear Operations Corp.*, 359 F.3d 1049, 1057 (8th Cir. 2004) (team leader who assigned tasks and conducted victim's performance evaluations not a supervisor). *Vance* establishes a "sharp line between co-workers and supervisors," not an invitation for speculation about amorphous levels of influence. 133 S. Ct. at 2448.

Were there record evidence that Townsel had the ability to effect tangible employment decisions against the employees he harassed, the appeal would come out differently. A police sergeant, for example, might have the power to fire or reassign a subordinate even though the nominal decision maker was the county sheriff. *Kramer v. Wasatch Cty. Sheriff's Office*, 743 F.3d 726, 739–40 (10th Cir. 2014). But both sides agree that Graham did not have to consider Townsel's advice at all. Graham gave Townsel's input, at most, deference to the extent that it had the power to persuade. That does not suffice. *See Velazquez-Perez*, 753 F.3d at 272; *see also Boyer-Liberto*, 786 F.3d at 289 (Wilkinson, J., concurring in part and dissenting in part).

6

Otherwise, the exception would swallow the rule. *See McCafferty*, 534 F. App'x at 731. Because AutoZone did not empower Townsel to take tangible employment actions against his victims, he was not their supervisor.

It makes no difference that Townsel could hire other hourly employees. Townsel could not and did not hire the employees he harassed, and that's what matters under *Vance*. *See* 133 S. Ct. at 2439. AutoZone did not assist Townsel in accomplishing his harassment because Smith, McEuen, and Willett were not "employees under his [] control" and he indeed had not hired them. *Id.* at 2448. That's how we have evaluated supervision before. *See Wierengo v. Akal Sec., Inc.*, 580 F. App'x 364, 371 (6th Cir. 2014) (holding that site supervisor, lead security officer, and security officer—none of whom could take tangible employment actions against the victim—were not supervisors); *see also Brandon v. Sage Corp.*, 808 F.3d 266, 273–74 (5th Cir. 2015) (executive who flew into town for a few days not a supervisor of the employee she retaliated against). We see no reason to depart from that approach here.

B.

Even if we treated Townsel as a supervisor, AutoZone has established an affirmative defense to liability. The defense has two elements: (1) "that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior"; and (2) that the harassed employees "unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Faragher*, 524 U.S. at 807; *see also Ellerth*, 524 U.S. at 764–65. AutoZone meets both requirements.

First, it exercised reasonable care to prevent harassment and promptly fired Townsel when it learned of his behavior. Proof that an employer promulgated an anti-harassment policy is not necessary as a matter of law, *Faragher*, 524 U.S. at 807, but an employer generally

satisfies this element "when it has promulgated and enforced a sexual harassment policy," *Thornton v. Fed. Express Corp.*, 530 F.3d 451, 456 (6th Cir. 2008). AutoZone had an appropriate anti-harassment policy in place, as the parties seem to agree. Contained in the employment handbook, the policy explained that sexual harassment includes "unwelcome verbal, nonverbal or physical sexual advances" as well as "sexually offensive remarks and jokes" and occurs when such behavior impacts employment decisions or interferes with work. R. 49-5 at 67. Any employees who observe or experience harassment, it adds, *must* report it to management, human resources, or a toll-free phone line. Employees can also report problems up the chain of command—such as from the store manager to the district manager.

The record confirms that each of Townsel's three victims acknowledged that it was her responsibility to read and understand AutoZone's employment handbook, and on several occasions each one of them signed forms saying so. AutoZone posted the toll-free number for reporting harassment at the store, and Smith acknowledges that she was aware of the phone line. That's enough to show that AutoZone promulgated the anti-harassment policy. A human resources representative need not look over each employee's shoulder as she reads each page of AutoZone's handbook. Even though the victims now claim that they did not in fact read the handbook, that is not AutoZone's fault. It exercised reasonable care by requiring employees to acknowledge their responsibility to read the policy by signing a form to that effect.

No less importantly, AutoZone promptly corrected Townsel's sexual harassment once it learned of the harassment. In Deener's interview with Smith and during Smith's deposition, Smith said that she first told Graham about Townsel's behavior on October 31, 2012. Under that timeline, there is no question that AutoZone acted promptly. Graham told Deener about the problem two days later, on Friday, November 2, 2012. And Deener talked with Smith the

8

following Monday. Most of Smith's complaints, moreover, did not relate to sexual harassment. But as soon as Smith mentioned the harassment in the letter she faxed to Deener on November 5, Deener accelerated the investigation. The next day, she traveled to the Cordova store and interviewed the relevant employees. By the next week, AutoZone had decided to transfer Townsel and ensured that Townsel and Smith were never alone together at the store again. AutoZone then transferred Townsel and later fired him. When Smith reported Townsel's harassment, AutoZone's anti-harassment policy worked as it was supposed to. *See Thornton*, 530 F.3d at 457.

The Commission offers an alternative timeline. In her letter to Deener and later in her deposition, Smith claimed that she spoke with Graham sometime between October 14 and 20 but couldn't remember the exact date or what she told him. Of course, if she cannot remember what she told him, that disproves the notion that she described a sexual harassment problem, as opposed to the operational problems featured in her later letter. At any rate, it was not unreasonable for Graham to wait two weeks before telling Deener about Smith's by-her-own-admission nebulous allegation in mid-October. The Commission itself conceded at one point that "Mr. Graham immediately informed Ms. Deener . . . that Ms. Smith had told him that Mr. Townsel was 'saying stuff in the store.'" R. 50-17 at 7. Given the vagueness of Smith's initial allegations and the later earnestness of Deener's investigation, AutoZone exercised reasonable care to address and eliminate the harassment. This is not a case where several supervisors observed and participated in harassment while ignoring the victims' complaints over months or years. *See Clark v. United Parcel Serv., Inc.*, 400 F.3d 341, 350–51 (6th Cir. 2005). Graham and Deener responded promptly to correct a new store manager's harassment.

Second, the harassed employees failed to report Townsel's behavior for several months. We have held that an employee unreasonably fails to take advantage of corrective opportunities when she waits two months to report harassment. *Thornton*, 530 F.3d at 457–58; *see also Pinkerton v. Colo. Dep't of Transp.*, 563 F.3d 1052, 1063 (10th Cir. 2009) (unreasonable reporting delay of two or two-and-a-half months); *Walton v. Johnson & Johnson Servs., Inc.*, 347 F.3d 1272, 1289–91 (11th Cir. 2003) (per curiam) (unreasonable reporting delay of two-and-a-half months). The victims in this case waited just as long. Smith's journal, which she gave to AutoZone only after Deener had begun investigating Townsel, confirms that the sexual harassment began by August 14, 2012, and had morphed into physically threatening behavior by August 17. Smith waited to tell Graham about the harassment until October 14, at the earliest, or October 31, at the latest. And when Smith finally reported Townsel's behavior, her allegations remained vague and secondary to her operational complaints. The two to two-and-a-half month delay and the nonspecific nature of her allegations means that Smith unreasonably failed to take advantage of corrective opportunities.

Just the same, neither McEuen nor Willett took advantage of corrective opportunities. McEuen understood that she could talk to Deener about any problems in the store. But McEuen did not talk to her until *after* Deener had begun her investigation. When McEuen talked with her former co-worker Mary Potkotter about how to report an "issue," McEuen did not say that she wanted to make a sexual harassment complaint. R. 53-2 at 6–7. Instead, AutoZone learned that Townsel had made offensive comments to McEuen only after Graham had talked to Smith and questioned McEuen about Townsel's behavior. Willett didn't report any harassment until Deener interviewed her.

Smith told Berry in late September 2012, it is true, that Townsel had grabbed her crotch and said that he wanted to have sex with her. But calling a *lower-ranking* co-worker at a *different* AutoZone store was not one of the three options that AutoZone provided for reporting sexual harassment. Smith knew that she could call the AutoZone hotline. But she never did so. Each of the victims had a responsibility to report Townsel's behavior up the ladder, to human resources, or to the AutoZone hotline. We cannot impute the victims' knowledge to AutoZone when none of them took any actions that would alert someone with the power to stop Townsel until Smith belatedly talked to Graham in October.

For these reasons, we affirm.

SUTTON, Circuit Judge. Judge Sutton concurs in all but Part II.A.