# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 14-30864

United States Court of Appeals
Fifth Circuit

**FILED**
September 3, 2015

Lyle W. Cayce
Clerk

KELLY MATHERNE,

Plaintiff - Appellant

v.

RUBA MANAGEMENT, doing business as IHOP

Defendant - Appellee

-----------------------------------------------------

SHARETHA TART,

Plaintiff - Appellant

v.

RUBA MANAGEMENT, doing business as IHOP

Defendant - Appellee

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:12-CV-2461 and No. 2:12-CV-2462

Before HIGGINBOTHAM, DENNIS, and HAYNES, Circuit Judges.

PER CURIAM:*

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Appellants Kelly Matherne and Sharetha Tart worked at an International House of Pancakes (IHOP) franchise operated by Appellee Ruba Management in Boutte, Louisiana. Matherne and Tart each worked for about one month before resigning around the same time. Each subsequently filed hostile work environment and constructive discharge claims against Ruba based on allegations of sexual harassment. Their related cases were consolidated for consideration by a magistrate judge who granted summary judgment for Ruba on all claims. Appellants challenge the summary judgment dismissal of their Title VII hostile work environment and constructive discharge claims. We affirm.

## I.

Matherne was hired on March 5, 2012, to work as a server. She worked her final shift about one month later on the night of April 6, was excused from work by doctor's note from April 19 until April 26, and formally resigned on April 27. Tart was hired on March 14, 2012, to work as a cook and "quit at about the same time" as Matherne, in early April 2012, having worked for between three weeks and one month.

As part of new-hire orientation, Ruba employees receive a copy of the company handbook, which highlights Ruba's sexual harassment policy and provides protocol for reporting complaints of sexual harassment.[1] When

---

[1] The handbook provides, in pertinent part:

[Ruba] maintains a strict policy prohibiting harassment based on a person's sex . . . This policy prohibits harassment in any form, including verbal, physical and visual harassment . . . The term "harassment" includes, but is not limited to, slurs, jokes, and other verbal, graphic or physical conduct relating to an individual's . . . sex . . . . Harassment also includes sexual advances, requests for sexual favors, unwelcome or offensive touching and other verbal, graphic, or physical conduct of a sexual nature.

If you feel a customer, or anyone with whom you come in contact with while working, is harassing you in any way you should make your feelings known

No. 14-30864

Matherne was hired she received and read a copy of the company handbook. Although Tart does not recall receiving a copy of the handbook, she was aware of Ruba's sexual harassment policy and the protocol for reporting complaints of sexual harassment.

Matherne claims that during her employment she was sexually harassed by four Ruba employees[2]: Tom (a cook), Melvin (a cook), Rafael (a cook), and Bob McCormick (her weekend manager).[3] Matherne alleges numerous instances of physical and verbal harassment by Tom, Melvin, and Rafael. Matherne also alleges that her weekend manager, McCormick, made several harassing comments of a sexual nature. Although Matherne did not report McCormick's comments to anyone, she did complain to various members of Ruba's management team about some of the cooks' actions. Tart claims that she was physically and verbally harassed by Manuel (a cook) and verbally harassed by another unnamed coworker. Tart reported the unnamed coworker to management and she complained about Manuel to "a female manager." Both

---

immediately. You should report harassment to your supervisor, the personnel manager, or the store manager. There is no single person to whom you must report your complaint. If you see or hear that any other team member has been harassed, you should report that harassment also . . .

All harassment complaints will be investigated, and when appropriate, corrective action, including disciplinary action, will be taken . . .

Do not assume that [Ruba] is aware of your problem. It is your responsibility to make known your complaints and concerns so that they may be addressed and resolved. If you have reported harassment and are dissatisfied in any way with the action taken, immediately report your dissatisfaction to a higher authority.

[2] In most cases the parties identify the alleged harassers by first name only, without reference to surname. We do the same where necessary.

[3] Matherne also alleges harassment by a fifth Ruba employee, Manuel (a cook), *see* Appellants' Brief at 9-10, but she did not raise any claim about Manuel in proceedings below. Matherne has waived any argument regarding Manuel. *See LeMaire v. La. Dep't of Transp. & Dev.*, 480 F.3d 383, 387 (5th Cir. 2007) ("[A]rguments not raised before the district court are waived and cannot be raised for the first time on appeal.").

No. 14-30864

Matherne and Tart also allege that they saw physical harassment or overheard verbal harassment directed at other female coworkers.[4] They reported some of this conduct.

Charlotte Owen served as the weekday manager for Matherne and Tart. Owen was aware of Matherne's complaints. Matherne requested that Owen record her reports of harassment by Tom and Melvin in "the book"— a company log in which managers record reports of harassment and other comments during each shift. Owen recorded Matherne's complaints and reviewed video footage from surveillance cameras installed in the restaurant, which did not reveal any actionable conduct. Matherne later came to Owen to follow up on whether Owen had recorded Matherne's complaints, which Owen had done. Matherne repeated her complaints about verbal harassment by Melvin and he was given a formal warning for "disrespectful communication towards [a] co-employee."

Lisa Garrison was the general store manager for the Boutte IHOP location. She also relieved McCormick as the weekend manager about one week before Matherne and Tart resigned. On April 6, 2012, Garrison received a report from the manager on duty that Matherne had complained that Rafael had tried to kiss her. Upon learning of the incident, Garrison came to the Boutte location and reviewed the surveillance video footage, which did not reveal any actionable conduct. Garrison interviewed Matherne and Rafael separately and subsequently "reduced Rafael's work schedule and transferred him to a different shift so that he and Matherne would not work together."

Around the same time, Garrison became aware that Tart had also complained of sexual harassment. Garrison reviewed the relevant surveillance

---

[4] We have held "that harassment of women other than the plaintiff is relevant to a hostile work environment claim." *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 653 (5th Cir. 2012) (citing *Waltman v. Int'l Paper Co.*, 875 F.2d 468, 477-78 (5th Cir. 1989)).

video footage, which did not reveal any actionable conduct. She also interviewed Tart, the alleged harassers, and other employees. At Tart's request, Garrison moved her to a different shift so that she would no longer have to work with the alleged harassers. Garrison also conducted a full-staff employee meeting during which she discussed Ruba's prohibition against sexual harassment and required all employees to watch an educational video about workplace sexual harassment.

Matherne and Tart subsequently resigned from their respective positions and each filed suit against Ruba in federal district court, alleging sexual harassment and constructive discharge under Title VII of the Civil Rights Act of 1964, as well as violations of various Louisiana state laws. Their cases were consolidated and transferred to a magistrate judge at the parties' consent. After a hearing, the magistrate judge granted summary judgment to Ruba on all claims. Matherne and Tart jointly appeal that decision to this court.

## II. Standard of Review

We review a grant of summary judgment de novo.[5] Summary judgment is proper if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law.[6] A genuine dispute of material fact means that "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[7] We view the evidence in the light most favorable to the nonmovant.[8] "We may affirm a grant of summary judgment based on any rationale presented to the district court for consideration and

---

[5] *Royal v. CCC & R Tres Arboles, L.L.C.*, 736 F.3d 396, 400 (5th Cir. 2013).

[6] Fed. R. Civ. P. 56(a).

[7] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[8] *Amigo Broad., LP v. Spanish Broad. Sys., Inc.*, 521 F.3d 472, 479 (5th Cir. 2008) (citation omitted).

No. 14-30864

supported by facts uncontroverted in the summary judgment record."[9]

### III. Discussion

Appellants challenge the summary judgment dismissal of their hostile work environment and constructive discharge claims under Title VII.[10] Appellants assert that the magistrate judge erred in concluding that, as a matter of law: (1) the alleged harassment did not create a hostile or abusive work environment; (2) Ruba, once it knew or should have known of the harassment, did not fail to take prompt remedial action; and (3) neither Matherne nor Tart was constructively discharged.

### A. Hostile Work Environment Claims under Title VII

Title VII makes it "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex."[11] The Supreme Court has held that Title VII proscribes the creation of "a discriminatorily hostile or abusive environment."[12] To establish a claim of hostile work environment under Title VII, a plaintiff must prove:

---

[9] *Nola Spice Designs, L.L.C. v. Haydel Enters., Inc.*, 783 F.3d 527, 536 (5th Cir. 2015) (internal quotation marks omitted).

[10] The magistrate judge concluded that the statutory scheme underlying Appellants' Louisiana state-law claims was "a 'mirror image' of Title VII," and held that the disposition of Appellants' federal law claims mandated "the same conclusion as to their state-law" claims. *See* R.770 (citing *Sims & Brown & Root Indus. Servs., Inc.*, 89 F. Supp. 920, 925 n.3 (W.D. La. 1995); *Fishel v. Farley*, Civ. A. No. 93-480, 1994 WL 90325, at *2 (E.D. La. Mar. 16, 1994); *Benett v. Corroon & Black Corp.*, 517 So. 2d 1245, 1246-47 (La. Ct. App. 1987)).

Federal Rule of Appellate Procedure 28(a)(5) requires an appellant's brief to include "a statement of the issues presented for review." Issues not raised or argued in the appellant's brief may be considered waived and thus will not be noticed or entertained. *See In re Tex. Mortg. Servs. Corp.*, 761 F.2d 1068, 1073 (5th Cir. 1985). Because Appellants have not presented an issue regarding the magistrate judge's holding as to their state law claims, they have waived any appeal from the summary judgment dismissal of those claims.

[11]  42 U.S.C. § 2000e-2(a)(1).

[12] *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993).

No. 14-30864

(1) she belongs to a protected group; (2) she was subjected to unwelcome harassment; (3) the harassment complained of was based on sex; (4) the harassment complained of affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action.[13]

Title VII does not reach "conduct that is merely offensive"—it proscribes only "an environment that a reasonable person would find hostile or abusive."[14] "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to [actionable discrimination]."[15] "For sexual harassment to be actionable, it must be sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive environment."[16] Reviewing courts must consider "all the circumstances," which may include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."[17] Core to this inquiry is whether a reasonable person in the plaintiff's position would find the work environment hostile or abusive.[18]

Finally, "it matters whether a harasser is a 'supervisor' or simply a coworker."[19] In *Vance*, the Supreme Court defined a "supervisor" for Title VII purposes as an employee "empowered by the employer to take tangible employment actions against the victim."[20] We have held that where the alleged

---

[13] *Royal v. CCC & R Tres Arboles, L.L.C.*, 736 F.3d 396, 401 (5th Cir. 2013) (internal quotation marks and alteration omitted).

[14] *Harris*, 510 U.S. at 21.

[15] *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (internal quotation marks and citation omitted).

[16] *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986) (internal quotation marks and alteration omitted).

[17] *Faragher*, 524 U.S. at 787-88 (internal quotation marks omitted).

[18] *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81-82 (1998).

[19] *Vance v. Ball State Univ.*, 133 S. Ct. 2434, 2439 (2013).

[20] *Id.*

No. 14-30864

harasser is a supervisor "the employee need only satisfy the first four elements" discussed above in making her prima facie case of hostile work environment.[21] In such cases however, "if no tangible employment action is taken"—as here—"the employer may escape liability by establishing, as an affirmative defense": (a) that it "exercised reasonable care to prevent and correct any sexually harassing behavior," and (b) "that the plaintiff unreasonably failed to take advantage of the preventative or corrective opportunities that the employer provided."[22]

**1.**

Appellants' arguments on appeal go to the fourth and fifth prongs of our hostile work environment analysis. The magistrate judge concluded that Appellants failed to meet either of these prongs as a matter of law. We need not decide whether the magistrate judge erred in concluding that the alleged sexual harassment was not sufficiently severe or pervasive to create a hostile work environment under the fourth prong because Appellants have not shown a genuine dispute as to whether Ruba took prompt remedial action once it knew, or should have known, of the harassment in question—the fifth prong. Because Appellants cannot meet this necessary element of the prima facie case, their hostile work environment claims fail as a matter of law.

**2.**

We pause to remind that we have held that where the alleged harasser is a supervisor a plaintiff need not satisfy the fifth prong of the hostile work environment analysis.[23] In this case, however, none of the alleged harassers qualify as a supervisor as that term is defined in *Vance*. It is undisputed that

---

[21] *Watts v. Kroger Co.*, 170 F.3d 505, 509 (5th Cir. 1999).

[22] *Vance*, 133 S. Ct. at 2439 (citing *Faragher*, 524 U.S. at 807; *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 765 (1998)).

[23] *Watts*, 170 F.3d at 509.

the cooks—Tom, Melvin, Rafael, and Manuel—are non-supervisor coworkers. Although neither Appellant alleged harassment by a "supervisor" in her initial complaint,[24] Appellants refer to the fifth alleged harasser, McCormick, as Matherne's "weekend manager."[25] Even assuming, without deciding, that Appellants have not waived this argument, the record could not support a reasonable conclusion that McCormick qualified as Matherne's "supervisor" under *Vance*.

There is no indication that McCormick had the power "to take tangible employment action[]" against Matherne—to "hire, fire, demote, promote, transfer, or discipline"[26] her. The record indicates that McCormick had some leadership responsibilities, including control over "the book," where managers "would make comments . . . if anything went wrong." Even so, the Court held in *Vance* that mere "leadership responsibilities" and "the authority to assign [job responsibilities]"[27] are insufficient to place an employee in the "unitary category of supervisors" with authority to cause "a significant change in employment status."[28] "Because there is no evidence that [Ruba] empowered [McCormick] to take any tangible employment actions against [Matherne],"[29] Matherne is not relieved of her burden under the fifth prong as to her claim regarding McCormick.

**3.**

Turning to the fifth prong, Appellants must prove that Ruba "knew or should have known of the harassment . . . and failed to take prompt remedial

---

[24] Both alleged, "[a]mong other matters . . . [harassment] by a co-employee."

[25] *See, e.g.*, Appellants' Brief at 4, 10-12. Only Matherne alleges harassment by McCormick.

[26] *See Vance*, 133 S. Ct. at 2439.

[27] *See id.* at 2449-50.

[28] *Id.* at 2443 (internal quotation mark omitted).

[29] *Id.* at 2454.

action."[30] This they cannot do. The record before us cannot support a reasonable jury finding in Appellants' favor on this prong as a matter of law. As an initial matter, in many cases Appellants did not make their complaints known to Ruba at all. For example, Matherne did not report McCormick's comments to anyone. She presents no argument that Ruba should have known about McCormick's comments even though she raised no complaint. She therefore cannot show that Ruba knew or should have known of the alleged harassment by McCormick in the first place, much less whether Ruba failed to adequately respond.

Where Appellants did make reports, the record indicates that Ruba responded promptly and with sufficient remediation. Appellants allege they complained to Ruba management about harassment by Tom, Melvin, Rafael, and Manuel. With regard to Tom and Melvin, Owen recorded Matherne's complaints and reviewed surveillance video footage, which did not validate Matherne's allegations. After Matherne repeated her complaints about Melvin he was given a formal warning. With regard to Rafael, Garrison made an in-person visit to the restaurant immediately upon learning of the alleged incident. She reviewed surveillance video footage, which did not validate Matherne's allegations. She also interviewed Matherne and Rafael separately. Garrison then "reduced Rafael's work schedule and transferred him to a different shift so that he and Matherne would not work together." With regard to Manuel, Garrison interviewed Tart and Manuel and, at Tart's request, transferred Tart to a different shift to separate her from Manuel. In addition to these actions, Garrison conducted a sexual harassment education program

---

[30] *Royal v. CCC & R Tres Arboles, L.L.C.*, 736 F.3d 396, 401 (5th Cir. 2013) (internal quotation mark omitted).

No. 14-30864

with the entire staff that among other things required all employees to watch an educational video about workplace sexual harassment.

These facts, which are uncontroverted in the summary judgment record, demonstrate that Ruba took prompt remedial action once it knew, or should have known, of the alleged harassment. The magistrate judge properly granted summary judgment to Ruba on Appellants' hostile work environment claims.

## B. Constructive Discharge

Appellants also challenge the summary judgment dismissal of their constructive discharge claims. "To prove constructive discharge, a party must show that 'a reasonable party in his shoes would have felt compelled to resign.'"[31] Constructive discharge requires a greater degree of harassment than that required to establish a hostile work environment claim.[32] In determining whether a reasonable employee would have felt compelled to resign, we have considered whether the following factors are present:

> (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger supervisor; (6) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (7) offers of early retirement or continued employment on terms less favorable than the employee's former status.[33]

Having carefully reviewed the record, we conclude that none of these factors are present in this case. Neither Appellant was reassigned to menial or degrading work, nor was either subjected to badgering or harassment designed

---

[31] *Dediol v. Best Chevrolet, Inc.*, 655 F.3d 435, 444 (5th Cir. 2011) (quoting *Benningfield v. City of Houston*, 157 F.3d 369, 378 (5th Cir. 1998)).

[32] *Benningfield*, 157 F.3d at 378.

[33] *Brown v. Kinney Shoe Corp.*, 237 F.3d 556, 566 (5th Cir. 2001) (alteration and citation omitted).

11

No. 14-30864

to encourage her resignation.[34] In fact, it appears that Ruba offered reasonable ameliorative solutions in both cases that each Appellant voluntarily rejected by choosing to resign.

## IV.

The judgment of the magistrate judge is AFFIRMED.

---

[34] *Cf. Haley v. Appliance Compressor LLC*, 391 F.3d 644, 651-52 (5th Cir. 2004) (denying constructive discharge claim even despite arguable presence of badgering and harassment calculated to encourage employee's resignation and collecting cases in which this court has affirmed summary judgment grants to employers on constructive discharge claims even where at least some of the *Brown* factors were present).